Wolverton *v.* Wolverton.

---

## WOLVERTON *v.* WOLVERTON.

[No. 20,344. Filed May 24, 1904.]

APPEAL AND ERROR.—*Assignment of Error to Conclusions of Law.*—An assignment that the court erred in its conclusions of law is joint, and can not be sustained where it is not contended that all the conclusions of law on the facts found are erroneous. *p. 29.*

SAME.—*Review of Alleged Errors.*—Where alleged errors in conclusions of law were not set out separately in the assignment of errors, and separately numbered and stated in the brief, under proper headings, with propositions or points relied on to support each separate error, together with citation of authorities to support them, under proper headings, as required by Supreme Court rule 22, such alleged errors can not be reviewed. *pp. 29, 30.*

PLEADING.—*Motion for New Trial.*—A motion for a new trial on the alleged grounds that the "decision" of the court is not sustained by sufficient evidence, and that such "decision" is contrary to law, is insufficient to raise any question as to the sufficiency of the court's conclusions of law. *p. 30.*

STATUTORY CONSTRUCTION.—*Words and Phrases.—Synonymous Terms.*—Under §568, subd. 6, Burns 1901, the term "decision" in the statute, on a motion for a new trial, is synonymous with "finding," when the case is tried by the court, which also includes a special finding. *p. 31.*

Wolverton v. Wolverton.

DIVORCE.—*Effect of Court Failing to Find on Special Answers.*—Where, in an action for divorce on the grounds of cruel and inhuman treatment, the defendant sets up as special defenses unsoundness of mind and condonation, and the court failed to find on such issues, but granted the plaintiff a divorce, the failure of the court so to find was equivalent to an express finding that such defenses had not been established. In this case the husband was 40 years old and his wife was 13 years his junior. He had persisted, for years, in great brutality toward his wife. On the last occasion of brutal treatment, while she was attempting to get into a carriage where he and their children were, intending to go to a circus, he dragged her from the carriage three different times, one time pinioning her to the ground with his knee, the struggle resulting in the breaking of two of the wife's ribs. She finally succeeded in going with her husband and children, and returned home with them late at night, remaining with him and occupying the same room and bed the remainder of the night. Next morning she left him and brought suit for divorce. *Held*, that plaintiff's acts in cohabiting with her husband during the remainder of the night, under such circumstances, did not constitute such condonation of the husband's offense as precluded the wife from obtaining a divorce. *pp. 32–34.*

SAME.—*Allowance and Attorney Fees.*—Neither the amount of attorney's fees nor the sum directed to be paid for maintenance of children, is a part of the judgment. They are allowances, the collection of which is enforceable by other means than execution. *p. 35.*

From Blackford Circuit Court; *E. C. Vaughn*, Judge.

Action by Scelinda E. Wolverton against Abner D. Wolverton. From a judgment in favor of plaintiff, defendant appeals. Transferred from Appellate Court, under § 1337u Burns 1901. *Affirmed.*

*A. M. Waltz, E. W. Secrest, J. S. Dailey, Abram Simmons* and *F. C. Dailey*, for appellant.

*J. A. Hindman*, for appellee.

DOWLING, J.—Action by the appellee against the appellant for a divorce, alimony, custody of four infant children, and an allowance for their maintenance. The causes for divorce alleged in the complaint were cruel and inhuman treatment of the plaintiff by the defendant, and his failure to make reasonable provision for his family for more than two years. Answer in three paragraphs, the first being a general denial, the second alleging condonation of the injuries charged, and the third a plea that the

defendant at the time the grievances occurred was a person of unsound mind. Reply in denial. The cause was tried by the court and at the request of the defendant, a special finding of facts was made, and conclusions of law were stated thereon. The conclusions were favorable to the plaintiff, and judgment was rendered against the defendant. The court also made an order requiring the defendant to pay to the plaintiff, as a part of her necessary expenses in prosecuting her action, the fees of her attorney to the amount of $500. By a further order he was directed to pay the sum of $30 per month for the maintenance of the children until the further order of the court. From this judgment and from these allowances the defendant appeals.

No question is made upon the pleadings. The errors assigned, and not waived by failure to discuss them, are as follows: "(9) The court erred in the conclusions of law stated upon the special finding of facts; (10) the court erred in overruling appellant's motion to modify the conclusions of law stated upon the special finding of facts; (11) the court erred in overruling appellant's motion for a new trial; (12) the court erred in overruling appellant's motion to modify the decree and judgment; (13) the court erred in overruling appellant's motion to modify the judgment."

The court stated six separate conclusions of law, which were, in substance, as follows: (1) That the plaintiff was entitled to a divorce from the defendant; (2) that the plaintiff was entitled to the care and custody of the four children; (3) that the plaintiff was entitled to recover from the defendant, as alimony, $8,466; (4) that the defendant be required to pay to the plaintiff $500 for her attorneys' fees in the action, and that he also pay to her for the maintenance of the said children $30 per month until the further order of the court; (5) that the deed executed by the defendant, October 18, 1902, to Margaret Noonan, was fraudulent and void, and for that reason should be

set aside; (6) that the plaintiff had a lien upon the said real estate for the amount of her judgment in this action, and that the said real estate should be sold to pay the same.

The ninth assignment of error (being the first set out in this opinion), stating that the court erred in its conclusions of law, is joint, and therefore, unless good as to all said conclusions, it is good as to none. *Jones* v. *State* (1903), 160 Ind. 537, and cases cited; *Saunders* v. *Montgomery* (1895), 143 Ind. 185; *Clause Printing Press Co.* v. *Chicago, etc., Sav. Bank* (1896), 145 Ind. 682; *Royce* v. *Bourne* (1897), 149 Ind. 187, 190; *Jones* v. *Mayne* (1900), 154 Ind. 400; *Maynard* v. *Waidlich* (1901), 156 Ind. 562, 565. It is not contended that all the conclusions of law upon the facts stated were erroneous; hence this assignment could not avail the appellant. But, even if the assignment had been several, it could not have been considered. Neither in appellant's statement of points and propositions in his brief nor in his printed argument is there any point or proposition to the effect that any conclusion of law stated by the court is erroneous.

Rule twenty-two of this court contains this requirement: "Fifth. * * * Following this statement [of so much of the record as fully presents every error and exception relied on], the brief shall contain, under a separate heading of each error relied on, separately numbered propositions or points, stated concisely, and without argument or elaboration, together with the authorities relied on in support of them. * * * No alleged error or point, not contained in this statement of points, shall be raised afterwards, either by reply brief, or in oral or printed argument, or on petition for rehearing." Under the heading of "propositions and authorities," in appellant's brief, two propositions only are set out, viz.: "The decision of the court is not sustained by sufficient evidence; the decision of the court is contrary to law." Where error is predicated of or upon conclusions of law stated on a special finding of

facts, each error relied upon should be set out separately in the assignment of errors; and it should also be separately numbered and stated in the brief of the party complaining, under its proper heading. The propositions or points relied on to support each separate error, together with the authorities to sustain them, must also be set out under such headings. The supposed errors of the court in its conclusions of law are not stated in the brief for appellant, as required by rule twenty-two, *supra,* and therefore objections to such conclusions can not be raised by appellant in any manner.

The tenth error assigned—that the court erred in overruling appellant's motion to modify the conclusions of law—presents no question. Such a motion is not recognized by our code of procedure. The correctness of conclusions of law can be contested only by proper exception to each conclusion, and by assigning as error in this court that the trial court erred in each conclusion of law, or that the conclusion of law which is challenged is erroneous. *Maynard* v. *Waidlich, supra,* and cases cited.

The next assignment is that the court erred in overruling appellant's motion for a new trial. The only reasons stated in this motion, discussed by counsel for appellant, are that "the decision of the court is not sustained by sufficient evidence, and that the decision of the court is contrary to law." Counsel for appellee makes the point that, as there was a special finding of facts, the reasons stated did not authorize the granting of a new trial; that these reasons did not raise any question of the sufficiency of the evidence to sustain the finding of facts, or any of them; and that error in a conclusion of law is not a reason for a new trial. So far as the conclusions of law are concerned, it is true that the motion presented no question. *Weaver* v. *Apple* (1897), 147 Ind. 304, 306; *Smith* v. *James* (1891), 131 Ind. 131; *Bundy* v. *McClarnon* (1888), 118 Ind. 165; *Weston* v. *Johnson* (1874), 48 Ind. 1, 2; *Rose* v. *Duncan*

(1873), 43 Ind. 512; *Cruzan* v. *Smith,* 41 Ind. 288; *Welch* v. *Bennett* (1872), 39 Ind. 136. But we think the reasons stated were sufficient to raise the question of the sufficiency of the evidence to sustain the special finding of facts. Among the reasons named in the statute for which a new trial may be granted is the objection that the verdict or decision is not sustained by sufficient evidence, or is contrary to law. §568 Burns 1901, subd. 6. The term "decision" in the statute necessarily embraces a general finding when the case is tried by the court. It has been held by this court that the term decision, as used in the statute, also includes a special finding, and that the words decision and finding are synonymous. *Weaver* v. *Apple, supra; Gates* v. *Baltimore, etc., R. Co.* (1900), 154 Ind. 338; *Weston* v. *Johnson, supra; Wilson* v. *Vance* (1876), 55 Ind. 394, 396; *Christy* v. *Smith* (1881), 80 Ind. 573, 577; *Rodefer* v. *Fletcher* (1883), 89 Ind. 563, 564. Upon the authority of these cases we hold that the averments in the motion for a new trial "that the decision of the court was not sustained by sufficient evidence," and "that the decision was contrary to law," were equivalent to statements that the special finding was not sustained by sufficient evidence, and that it was contrary to law. They did not, however, present any objection to the correctness of the conclusions of law, but applied exclusively to the finding of facts.

Under the assignments that the decision of the court is not sustained by sufficient evidence, and that it is contrary to law, counsel for appellant contend that the evidence established two facts, either of which was sufficient to defeat the plaintiff's action: (1) That the defendant was of unsound mind when the acts of cruelty charged in the complaint were committed, and (2) that the plaintiff condoned the grievances for which she demanded a divorce, and that the court should have so found. Both of these defenses were set up by special answers, but the finding of the court

sustains neither. The failure to find that the defendant was of unsound mind, or that a condonation of plaintiff's injuries took place, was tantamount to a finding that he was not of unsound mind, and that there was no condonation. The rule is well settled that the silence of a special finding in regard to a material fact which a party was required to prove must be taken as equivalent to an express finding against him that such fact was not established by the evidence. *State Bank* v. *Backus* (1903), 160 Ind. 682, and cases cited.

The plaintiff introduced no testimony on the issue of the insanity of the defendant, but the expert witnesses for the defendant on cross-examination testified that the defendant comprehended perfectly the difference between right and wrong; that he had sufficient self-control and power of will to refrain from acts of violence; that he possessed the ability to manage and control a large and valuable estate and all the details of his business affairs; and that at no time while he was being treated by them as a patient did they feel any apprehension that he would harm himself or others. The opinion of these witnesses that the defendant was of unsound mind rested largely upon the fact that he had barbarously mistreated his wife —a course of conduct which they thought inconsistent with sanity of mind. It also appeared from the proof that the cruelty and brutality of the defendant, his violent outbursts of anger and malice, and his inhuman disregard of his domestic obligations, were directed against his wife alone. He went upon the stand as a witness in his own behalf, but he did not testify that the barbarous conduct with which he was charged was the result of mental weakness, or of uncontrollable impulse, or that he had no recollection of it. He simply denied it. There was evidence, and an abundance of it, before the court which showed that the defendant was not of unsound mind, and the failure of the court to find the contrary was fully justified by the facts proved.

Was the evidence sufficient to sustain the defense of a condonation of the injuries to the plaintiff? The case made by the proof was one of almost unexampled cruelty, neglect, tyranny, and brutality on the part of the defendant, a man forty years of age, toward the plaintiff who was thirteen years his junior, constantly practiced and persisted in for years before the final separation of the parties. So far as the record discloses, this inhuman persecution was entirely unprovoked and without excuse. It culminated on July 22, 1902, when the defendant stated that he was going to Hartford City to attend a circus, and that he intended to take his children with him. He had before that threatened to take the children from her, and the plaintiff, fearing this, got into the carriage and declared that she would go along. He told her she should not, and ordered her to go out into the field and "top out" a haystack. The plaintiff said she would remain at home if he would leave the two younger children with her. He answered, "I'll see that you get out." He jerked her from the carriage with her infant in her arms, and threw her against the barn. The shock rendered her insensible. He caught her, shook her, and stood her upon her feet near the carriage. She climbed into the vehicle, and he again jerked her out, threw her on the ground, and started to drive off with the children. She sprang up, and pulled the trace, or tug, from the single-tree, and again entered the carriage. The defendant again threw her from the carriage to the ground, and struck her, saying, "I guess you'll stay, won't you?" She said, "No;" that if the children went, she would go too. The plaintiff once more got into the carriage, and was again thrown out by the defendant. He then got down with his knee upon her left side, and tied her hands with a handkerchief. In these struggles two of plaintiff's ribs were broken, and her body "was beaten black and blue all over," but she could not say that all the bruises were received that day, because he had beaten her two or three

days before. The plaintiff succeeded in going with the defendant and her children, and all of them went to the circus. They returned home about midnight, and plaintiff and defendant occupied the same room and bed until morning. The plaintiff then left the defendant, and brought this suit for divorce.

Condonation of marital injuries is a voluntary pardon and remission of a known wrong done by a husband to his wife, or by a wife to her husband, which would entitle the injured party to a divorce, and a waiver of the right to maintain an action for a divorce for the same, subject to the condition, express or implied, that the misconduct or injury will not be repeated, and that the offending party will thereafter treat the other with conjugal kindness. In most cases condonation will be presumed from proof of cohabitation of the parties subsequent to knowledge of the injury. *Armstrong* v. *Armstrong* (1866), 27 Ind. 186; *Rose* v. *Rose* (1882), 87 Ind. 481; *Sullivan* v. *Sullivan* (1870), 34 Ind. 368; *Burns* v. *Burns* (1877), 60 Ind. 259; *Phillips* v. *Phillips* (1835), 4 Blackf. 131; *Phillips* v. *Phillips* (1870), 27 Wis. 252, 253; 8 Cyc. Law & Proc., 559, and notes; 9 Am. & Eng. Ency. Law (2d ed.), 822, and notes; *Turlon* v. *Turlon* (1830), 3 Hagg. Ecc. 338, 351.

It was decided by this court in *Sullivan* v. *Sullivan, supra,* that the doctrine of condonation applies to cruel treatment as a cause for divorce as well as to adultery and other marital injuries. See, also, *Gardner* v. *Gardner* (1854), 2 Gray (Mass.) 434.

When the condition and circumstances of the plaintiff, physical and mental, when she returned to her home with the defendant at midnight are considered, it can not be said that her cohabitation with the defendant for the remainder of the night, or even the submission of her person to him, evidenced a voluntary pardon and remission of the outrageous wrongs inflicted upon her for so many years. It is also a fact of considerable importance that she left him the same

Wolverton *v.* Wolverton.

morning, and immediately commenced this suit. A distinction has been properly made between actions for divorce on account of conjugal infidelity and actions for divorce for cruelty, and it has been held by courts of other states that a condonation of extreme and repeated cruelty will not be inferred from a single act of sexual intercourse. *Phillips* v. *Phillips* (1878), 1 Ill. App. 245; *Cox* v. *Cox* (1889), 1 Silv. Sup. (N. Y.) 223; *Reynolds* v. *Reynolds* (1867), 34 How. Pr. 346; *Doe* v. *Doe* (1889), 52 Hun (N. Y.) 405. In this State the statute itself declares that no divorce shall be granted for adultery when the party seeking it has voluntarily cohabited with the other with knowledge of the fact. No provision of this kind is made where the divorce is sought on account of cruel treatment. In our opinion, the evidence was not sufficient to support the defense of condonation of the wife's injuries.

The motion for a new trial raises no question in regard to the amount allowed the plaintiff as alimony, but, if we were at liberty to consider the question, we would not think the amount fixed by the court excessive. On the contrary, in view of the value of defendant's property, the ages of the parties, and the time they lived together, it was less than the court would have been authorized to allow. It follows from what we have said that no error was committed in overruling the motion for a new trial.

It is extremely doubtful whether the motions to modify the judgment and decree presented any question as to the reasonableness of the allowances for the plaintiff's expenses in prosecuting her suit, or as to the amount directed to be paid for the support of the children. It would seem that neither the amount of the attorneys' fees nor the sum directed to be paid monthly for the maintenance of the children is a part of the judgment in the cause. Strictly speaking, they are allowances, and their collection is enforceable by other means than execution. But, if the right to raise the question by motions of this kind is conceded, we think

Lake Erie, etc., R. Co. v. Shelley.

it clear that the allowances made by the court for these purposes were not excessive, and we discover in them no abuse of that discretion which the court is always required to exercise in such cases. Indeed, it appears to us that the allowance for the maintenance of the children is inadequate, and that the same ought to be increased by the trial court.

The finding, conclusions of law, and judgment were just and proper, and there is no error in the record. Judgment affirmed, with eight per cent. damages upon the face of the judgment for alimony, with six per cent. interest on such damages from the date of the judgment in the Blackford Circuit Court.