GRAVES *v.* GRAVES

[No. 18,386. Filed June 12, 1953.]

*C. W. H. Bangs, J. Edward Roush* and *Bangs & Roush,* all of Huntington, for appellants.

*Gates & Gates,* of Columbia City, for appellee.

ACHOR, P. J.—This is an action for divorce and alimony brought by appellee against the appellant. The grounds for divorce as alleged in the complaint were as follows: "That the plaintiff further alleges and says that the Defendant before said separation was guilty of cruel and inhuman treatment in that ————.''

By its decree the trial court granted the appellee a divorce and alimony in the sum of $3,000. Grounds for appellant's motion for a new trial were as follows: "The decision of the court is not sustained by sufficient evidence and is contrary to law." "The alimony award by the court is excessive."

In this court appellant contends first, that the allegation of cruel and inhuman treatment was insufficient for want of facts. However, the insufficiency of the pleading was first assigned as error during this appeal and it is axiomatic that on appeal defective pleadings which might have been amended in the court below are deemed amended on appeal. *Richardson* v. *Stephenson* (1906), 38 Ind. App. 339, 78 N. E. 256; *Curtis Storage and Transportation Co.* v. *Rosenberg* (1939), 106 Ind. App. 622, 21 N. E. 2d 440.

No issue is made as to the sufficiency of the evidence to support the alleged grounds for divorce. However, appellant urges that other evidence leads inescapably to the conclusion that appellee had condoned such treatment prior to the trial of the cause, which condonation as a matter of law operated to bar appellee's right to a divorce. It is contended that such condonation is established by uncontradicted evidence of continued cohabitation by the parties, both before the separation and also by their conduct after the filing of the suit for divorce.

In regard to the evidence supporting the fact of condonation prior to the separation of the parties, the evidence is undisputed that the parties lived and cohabited together until the date of separation and that the last abuse occurred "three weeks before we separated."

The first question which we are required to determine is whether or not under the evidence condonation

must be presumed as a matter of law. The rule of law with regard to the presumption of condonation, drawn from the fact of continued cohabitation, is now well defined. "The general presumption is that a husband and wife living in the same house live on terms of matrimonial cohabitation. However, this presumption may be overcome by facts and circumstances which destroy the probability from which the presumption springs. . . ." 27 C. J. S., Divorce, §61. See also *Waugh* v. *Waugh* (1874), 47 Ind. 580.

In the absence of circumstances to the contrary, "A continuance of cohabitation ordinarily will condone an act of cruelty and bar a divorce therefor, although the wife is the complaining party." 27 C. J. S. §61, *supra;* 14 A. L. R. 902, 98 A. L. R. 1354. Upon this subject, the Supreme Court of this state has said:

"As a general legal proposition, it may be asserted, that, condonation of the offence, or wrong, which might be cause of divorce, will bar a suit by the condoning party for a divorce, on account of such offence.

"Condonation may be inferred, from the facts of living and cohabiting, by the injured party, with the offender, after knowledge of the commission of the offence. *Cohabitation will be inferred, nothing appearing to the contrary, from the fact of the living together of husband and wife.* We use the terms 'cohabit' and 'cohabitation' as implying sexual intercourse.

"In case of adultery or fornication, the husband and wife may live together and cohabit, after the commission of the offence, in ignorance, by the injured party, of the fact of its commission. But *in cases of cruel treatment* and failure to provide, of which the present is one, the knowledge of the commission of the offence or offences, by the injured party, is necessarily coexistent with the commission of the injury, because it operates, or is inflicted,

directly upon her or his own person. Hence, a *continuous living and cohabiting with the offender must, prima facie at all events be accompanied with or by a succession of condonations, while such living and cohabiting continue.*" (Our italics.) *Burns* v. *Burns* (1877), 60 Ind. 259, 260.

The rule was later affirmed in the case of *Hash* v. *Hash* (1945), 115 Ind. App. 437, 444, 59 N. E. 2d 735.

> In the light of the above authorities, we conclude that a presumption of condonation must be drawn from the continued cohabitation of the parties following the last act of abuse.

However, as heretofore stated, "this presumption may be overcome by facts and circumstances which destroy the probability from which the presumption springs." 27 C. J. S., *Divorce*, §61, *supra*. Therefore, the second question which we are required to determine is whether there was any evidence before the court which would negative the presumption of condonation resulting from such continued cohabitation.

Unfortunately, in the trial of this case, as is too often true, the attorneys obviously concerned themselves primarily with property rights rather than with the relationship of the parties prior to their separation. We have carefully examined both the briefs and the transcript but find no evidence in the record before us regarding the facts and circumstances which proximately preceded the separation of the parties from which a recurrence of some abuse might have been inferred. Also, the record is wholly void of any evidence, or of inferences which could be drawn therefrom, of any coercion or restraint over the appellee by appellant, or of any facts or circumstances, either spiritual, mental, physical or financial, which would negative the presumption of condonation.

We perceive that an abused spouse might be prompted to postpone a break in her marriage because of noble motives which might, in a proper case, destroy the presumption of condonation. However, we are not permitted to speculate regarding possible circumstances upon which there is no evidence in the record. Furthermore, we are impressed by the fact that the home is still and must remain a cornerstone of our social order: that a primary covenant of the marriage contract as entered into between the parties and guarded by the state, is a promise to love for better or worse; that the chief attribute of love in marriage is condonation or pardon and remission of matrimonial abuses; that the doctrine of condonation is therefore essential to the laws of marriage and divorce and, consequently, before the parties may engage the office of our courts to sever their matrimonial bonds, it should appear that the abuse complained of has not been condoned.

We are, therefore, constrained to conclude, on the basis of the evidence before us, that the "cruel and inhuman treatment" of appellant was condoned by the continued cohabitation of the parties, and that such condonation is a bar to divorce. Because of our conclusion upon this issue, no good purpose would be served by resolving the factual questions of condonation subsequent to the filing of this action, or of the amount of the alimony awarded.

However, in aid of the parties in event of a retrial of this cause, we reaffirm the well established rule of law that, ". . . to be successful in action for divorce, it is necessary to allege and prove a separation (by separation we mean *cohabitation must have stopped*) of the parties *from the time the matrimonial offense was committed*, or from the

time the aggrieved party learned such offense was committed, *to the time of the trial, . . ."* (Our italics.) *Hash* v. *Hash, supra,* and that pursuant to said rule, proof of sexual intercourse pending trial of an action for divorce creates a presumption of condonation, which can be rebutted only by evidence that the consortium was not voluntary.

Judgment is therefore reversed, with instructions to sustain the motion for a new trial.

NOTE.—Reported in 112 N. E. 2d 869.