MITCHELL V. MITCHELL

[No. 18,727.   Filed April 3, 1956.]

*Mellen & Mellen,* of Bedford, for appellant.

*Ruel W. Steele,* of Bedford, and *Taylor Hoffar,* of Seymour, for appellee.

KENDALL, J.—Appellee brought this action in the trial court for divorce alleging cruel and inhuman treatment as a basis therefor. Answer was filed by appellant in two paragraphs, first, in denial; second, that after the grievances complained of, they were condoned.

Trial by court resulted in a judgment favoring appellee in which the court provided for a property settlement between the respective parties.

Appellant's motion for new trial, which was overruled, contended that the decision of the trial court was contrary to law and not sustained by sufficient evidence.

The assignment of error is the overruling of the new trial motion.

In view of the questions raised by appellant, we are required to examine the record to determine whether or not there is evidence of probative value substantiat-

ing one or more grounds for divorce as alleged by appellant, and whether or not the appellant sustained her burden of proof as to the affirmative paragraphs of answer of condonation.

The acts which appellee alleged to have constituted cruel and inhuman treatment are that the appellant quarreled and nagged him almost continuously; false accusations of associating with other women, which caused him embarrassment; refusal to sign business papers after agreeing to do so, causing him embarrassment; having him investigated by governmental officials, to his embarrassment; false accusations of illicit and unlawful acts while in military service, and appellant's statement to others that she would have him convicted; appellant's accusations that appellee was insane, and she would have him committed to an institution.

This was the third separation for the parties. The evidence reveals they were married June 21, 1919, and the final separation occurred January 15, 1952; however, appellant was not certain as to whether it was January 15 or about the first of January.

There was evidence that appellant quarreled with appellee for thirty years; however, most of the acts of nagging and quarreling related to a period of six to eight months during the last year; that she demanded appellee to share her bedroom, and, in so doing, she beat upon him with her fists and called him names in a loud voice; that she shook his bed to such an extent that the slats fell out; that she accused him of being insane up until final separation; that they bought a property in joint names, which appellant wanted, and, in so doing, she agreed to sign business papers to secure a loan; that after the loan was approved by the bank, she refused to sign the necessary papers, the last time

being January, 1952; that appellant had appellee investigated by the Department of Justice as late as January, 1952, claiming that he had violated the Mann Act. Appellee testified that he agreed with the Immigration Department to be the sponsor of a Miss Koch who was his secretary while a Major in Germany during World War II; that he had helped her enroll in Indiana University, at which time the appellant was with him; that he was willing for the property to be divided and that he could no longer live with her as her husband; that on some occasions appellant was agreeable to his sponsorship of the girl, and on other occasions would quarrel about it in the presence of friends; that appellant knew her while she was in Germany for a short time and met her in Washington, D. C., together with appellee; that appellant had stated she would have appellee sent to Leavenworth for black-market activities while he was in Europe, and that there was no foundation for such charges. A bank executive testified as to appellant's refusal to sign the loan papers. There was evidence that appellant told appellee's parents that he was crazy and that she raved at appellee on one particular occasion in their presence—the appellee not taking any part in such occurrence. This was denied by appellee who testified to the contrary that he was sick. Appellee's brother testified that appellant propositioned him on the two of them getting a room together while on a trip to Florida in 1937 which was not revealed to appellee until about the time of trial; that appellant likewise made statements to appellee's brother of his being crazy; that appellant had made the statements that appellee had a venereal disease.

The appellant's evidence consisted of a categorical denial of appellee's evidence as to statements made to

him or about him denying arguing with him or nagging him, denied making any false accusations about Miss Koch or her conduct with appellee. She testified that appellee was nervous and sick and while in Germany he had meningitis of the throat. She denied conversations with appellee's brother and stated that they had sexual relations up until the time of separation, January, 1952, or January 15, 1952; that they had some disagreements as to where they were going to live. The evidence revealed they had lived in Bedford, Indiana, Indian Springs, Florida, Washington, D. C. and Minnesota.

One can readily ascertain that there was a conflict in the evidence before the trial court, and that there is evidence of probative value to sustain the charge of cruel and inhuman treatment by the trial court. This court cannot weigh conflicting evidence, and if there is any substantial evidence in the record to sustain the findings and decisions of the trial court, the judgment must be affirmed. The trial judge, it must be borne in mind, as the trier of the facts, was not bound by the testimony of any single witness or any particular item of evidence. As has been so often and correctly stated, it was the exclusive province of the trial court to determine the credibility of the witnesses, whom he had an opportunity to observe, weigh the evidence and determine which of the parties, if either of them, was entitled to a divorce, which decision he made favoring appellee. In view of the conflict of evidence, and, under the trial court's discretion, there was substantial evidence of probative value to sustain the charge of cruel and inhuman treatment. *McDaniels* v. *McDaniels* (1945), (T. D. 1945), 116 Ind. App. 322, 62 N. E. 2d 876; *Stinson* v. *Stinson*

(1947), 117 Ind. App. 661, 74 N. E. 2d 745; *Cornwell* v. *Cornwell* (1940), 108 Ind. App. 350, 29 N. E. 2d 317.

Appellant further contends that each of the acts of cruel and inhuman treatment was condoned by appellee by cohabitation and acts of intimate relations up until the time of separation, and cites authorities which she says substantiates said view including the case of *Graves* v. *Graves* (1953), 123 Ind. App. 618, 112 N. E. 2d 869. Contrary to appellant's contention, as stated in the brief, the burden of proving condonation rested upon appellant and not appellee. *Van Antwerp* v. *Van Antwerp* (1954), 125 Ind. App. 65, 122 N. E. 2d 137.

The Graves case, *supra,* correctly states the law as given in 27 C. J. S., Divorce, §61, p. 613, "A continuance of cohabitation ordinarily will condone an act of cruelty and bar a divorce therefor, although the wife is the complaining party, . . ." Likewise, it is said in 27 C. J. S., *supra,* and quoted with approval of the Graves case, *supra,* that: ". . . this presumption may be overcome by facts and circumstances which destroy the probability from which the presumption springs." It is significant to note that the Graves case, *supra,* presented a different set of facts than the ones under consideration. Judge Achor stated for this court, in substance, that in the trial of the Graves case, the attorneys therefor concerned themselves with property rights more than they did with the relationship of the parties prior to the separation. The court further stated:

"We have carefully examined both the briefs and the transcript but find no evidence in the record before us regarding the facts and circumstances which proximately preceded the separation of the parties from which a recurrence of some abuse

might have been inferred. Also, the record is wholly void of any evidence, or of inferences which could be drawn therefrom, of any coercion or restraint over the appellee by appellant, or of any facts or circumstances, either spiritual, mental, physical or financial, which would negative the presumption of condonation."

In this case, therefore, we are not confronted with the situation that the court was in deciding the Graves case, *supra*.

The trial court was required to determine whether there was any evidence, or evidence from which an inference could be drawn, which would negative the presumption of condonation resulting from cohabitation and the intimate acts as alleged by appellant. The court having found against the appellant upon the record presented, considering such evidence and all the facts, this court cannot substitute its opinion for the trier of the facts. We well recognize that condonation is a defense for divorce on the grounds as alleged in this complaint, where it has not been avoided or revoked by subsequent misconduct. Likewise, that condonation of cruel treatment is conditioned that it shall cease, and, upon its repetition that the former wrongs will be revived. Condonation ceases to be a defense where the condoned offense is subsequently repeated. *Van Antwerp* v. *Van Antwerp, supra.* The general rule is that to constitute a revival of the condoned offenses, the offending spouse need not be guilty of the same character or degree of offense as that condoned; any misconduct is sufficient which indicates to the court by evidence of probative value that the condonation was not accepted in good faith and upon the reasonable conditions implied. Many of the decisions of this and the Supreme Court have adopted the expres-

sion that: "Condonation is upon the condition that the plaintiff shall be thereafter treated with conjugal kindness".

After a careful review of the record presented in this case, there was substantial evidence of probative value to warrant the trial court in finding that appellant had no intention of affecting a permanent reconciliation and is best demonstrated by the course of conduct of appellant, and that there is ample evidence from which the court could and did find that appellant continued her manner of treatment, actions and conduct toward appellee, even after continuing to cohabit with him, and that, under such conditions, she should not be permitted to take advantage of her own wrong. As to the act of intercourse which appellant testified to, she gave no specific date, stating that it continued until date of separation which date was uncertain in her mind as being either the first of January or January 15, 1952. Nevertheless, all of these facts were before the court for its consideration. The rule is that sexual cohabitation, after acts constituting cruel and inhuman treatment, cannot be considered as condonation in the sense in which it would be after an act of adultery. Even though the parties did engage in sexual relations, for such act to constitute condonation of the acts charged in appellee's complaint, such acts must have been accompanied with an intent on the part of the appellee to condone, which intention to condone in this case was found adverse to appellant. *Fordice* v. *Fordice* (1956), 126 Ind. App. 562, 132 N. E .2d 618; 14 A. L. R. 939; 17 Am. Jur., Divorce and Separation, §210, p. 257. We therefore conclude that the evidence was such that the appellant failed in her proof to overcome the presumption that cohabitation or such act, or acts of intercourse constituted condonation. We cannot

overrule the decision of the trial court without weighing the evidence. This we cannot do.

Judgment affirmed.

Royce, C. J. not participating.

NOTE.—Reported in 133 N. E. 2d 79.