DANIEL R. CHRISMAN v. MARY A. CHRISMAN.
[No. 2-1172A106. Filed June 12, 1973.]

*John F. White*, of Indianapolis, for appellant.

*Marc A. Bleecker*, of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—This is an appeal by defendant-appellant Daniel Chrisman (Daniel) challenging a trial court decision awarding his wife, plaintiff-appellee Mary Chrisman (Mary), an absolute divorce, on the ground that condonation barred her right to a divorce and further that child support was excessive.

We affirm.

## FACTS

The facts and events most favorable to Mary are:

The first marriage between Mary and Daniel produced three children and ended in divorce in October of 1966. They remarried on June 30, 1967.

Mary and Daniel frequently argued and she testified that Daniel often hit her, shoved her against the kitchen wall, and on one occasion attempted to eject her bodily from the house. This conduct destroyed her peace of mind.

As a result of these arguments and Daniel's actions, they separated on October 20, 1971, and on October 29, 1971 Mary filed a Complaint For Divorce on grounds of cruel and in-

human treatment. The evidence indicates that all of Daniel's acts of marital misconduct occurred prior to the separation and the filing for divorce and that no acts of cruelty occurred thereafter.

While the divorce action was pending they frequently discussed reconciliation in an attempt to resolve their differences. Mary testified that she and Daniel did not live together as husband and wife after the separation but that Daniel often stayed with her on weekends. During these weekend "visits," Mary admitted that she and Daniel had sexual relations, attended church together, and took the children to school on Monday mornings.

On June 22, 1972, trial was held on Mary's Complaint For Divorce. She testified that despite Daniel's weekend "visits" she never intended to dismiss her Complaint or to forgive Daniel for his previous acts of cruel and inhuman treatment. Further, she felt uneasy about Daniel's "visits" and wished that he would see the children away from the home.

Evidence indicated that Daniel was earning $11,600.00 per year and Mary approximately $10,000.00 per year. Her testimony was that child support amounted to $125.00 per week, mortgage payments $111.00 per month, and that she expected to spend $375.00 for high school tuition for the oldest son. Their savings account in the amount of $1,600 was exhausted by Mary for support of the children while the divorce was pending.

In response to a question by the trial court as to whether her desires for a divorce would change if the court took the matter under advisement for six months, Mary replied that her feelings would not change during a six-month or longer period.

The trial court granted Mary an absolute divorce and custody of the children and child support payments in the amount of $75.00 per week.

Daniel now appeals.

## ISSUES

ISSUE ONE. Did Mary condone Daniel's previous cruel and inhuman conduct by having sexual relations with him during the pendency of the divorce action thereby barring her right to an absolute divorce?

ISSUE TWO. Is the amount of child support awarded by the trial court excessive?

As to ISSUE ONE, Daniel contends that by having sexual relations with him Mary is presumed to have condoned any and all acts of cruel and inhuman treatment on his part, a presumption which can only be overcome by evidence that she did so involuntarily. There was no such evidence.

Mary replies that any evidence of condonation was rebutted by her testimony that she did not intend to effectute a permanent reconcilation nor forgive Daniel for his prior acts of cruel and inhuman treatment.

As to ISSUE TWO, Daniel contends that the child support order awarded by the trial court is excessive and not supported by sufficient evidence.

Mary replies that the child support order was made pursuant to the discretion of the trial court and was based upon sufficient evidence.

## DECISION

ISSUE ONE.

CONCLUSION—It is our opinion that by having sexual relations with Daniel during the pendency of the divorce Mary did not condone Daniel's prior acts of cruel and inhuman treatment.

Condonation in the law of divorce is the *intentional* forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated and that the offender shall thereafter treat the forgiving party with conjugal kindness. *David* v. *David* (1946), 116 Ind. App. 603,

66 N.E.2d 248; *Hash* v. *Hash* (1945), 115 Ind. App. 437, 59 N.E.2d 735; *Heckman* v. *Heckman* (1956), 235 Ind. 472, 134 N.E.2d 695.

Generally, condonation of the wrongful conduct which might be a cause for divorce will bar a suit by the condoning party for divorce. *Graves* v. *Graves* (1953), 123 Ind. App. 618, 112 N.E.2d 869; *Mitchell* v. *Mitchell* (1956), 126 Ind. App. 377, 133 N.E.2d 79.

But in order to be effective, condonation must be the voluntary act of the aggrieved spouse. *Hash* v. *Hash, supra.*

It is generally stated that a presumption of condonation arises when the aggreived spouse, with knowledge of the prior wrongful conduct, lives in the same house on terms of matrimonial cohabitation with the spouse guilty of the wrongful conduct. Long ago our Indiana Supreme Court discussed condonation in these terms:

> "Condonation may be inferred, from the facts of living and cohabiting, by the injured party, with the offender, after knowledge of the commission of the offence. Cohabitation will be inferred, *nothing appearing to the contrary,* from the fact of the living together of husband and wife. We use the terms "cohibit" and "cohabitation" as implying sexual intercourse." *Burns* v. *Burns* (1877), 60 Ind. 259, 260. (Emphasis supplied.) See also: *Graves* v. *Graves, supra.*

An important element of condonation is intent to condone or forgive. Even where the parties have engaged in acts of sexual relations, to constitute condonation of a spouse's prior cruel and inhuman treatment such acts must have been accompanied by an intention of the aggrieved spouse to condone. *Mitchell* v. *Mitchell, supra; Fordice* v. *Fordice* (1956), 126 Ind. App. 562, 132 N.E.2d 618. So, cohabitation and sexual relations do not constitute condonation of prior cruel and inhuman treatment *unless done with an intent to forgive. Fordice* v. *Fordice, supra; Mitchell* v. *Mitchell, supra; Heckman* v. *Heckman, supra; Wolverton* v. *Wolverton* (1904), 163 Ind. 26, 71 N.E. 123.

Recognizing that "to err is human but to forgive is divine," an aggrieved spouse may by his or her conduct express forgiveness. The existence of such forgiveness is a question of fact to be determined by the trier of fact. *Fordice* v. *Fordice, supra.*

There was competent evidence rebutting the presumption of condonation arising out of the weekend visits between Mary and Daniel. She testified that she never intended to forgive Daniel and that she had no intention of dismissing her Complaint. Also she indicated to the court that her desire for a divorce would not change even if taken under advisement for a period of six months or longer.

The trial court, as trier of the fact, weighed the evidence and properly determined that Mary did not condone Daniel's past acts of cruel and inhuman treatment. *Van Antwerp* v. *Van Antwerp* (1954), 125 Ind. App. 65, 122 N.E.2d 137; *Heckman* v. *Heckman, supra.*

Daniel cites *Graves* as factually similar and therefore direct authority for his position that condonation results from sexual relations. In *Graves,* the husband committed acts of cruel and inhuman treatment prior to a separation from his wife. After separation and before trial, the parties cohabited and engaged in sexual relations. There was no evidence that the husband committed any acts of cruel or inhuman treatment during or after this period of cohibitation. On this basis the trial court found that the wife condoned her husband's prior cruel acts and that she was not entitled to an absolute divorce.

In *Graves,* there was no evidence indicating the wife did not intend to forgive the husband for his prior acts of cruel treatment. To the contrary, the wife's conduct tended to indicate that she forgave her husband. However, Mary's own testimony provides evidence of an intention on her part *not* to forgive Daniel.

*Graves* and *Hash* are construed by Daniel as restricting rebuttal of the condonation presumption arising from sexual relations between the parties pendente lite, to "evidence that

the consortium was not voluntary." Lifted out of context there is such a misleading implication, but all the Indiana cases considering the subject stress the intent of the aggrieved party as the essence of condonation. The presumption is rebuttable by any competent evidence tending to prove intent not to condone or that consent was not voluntary. *Graves* v. *Graves, supra; Waugh* v. *Waugh* (1874), 47 Ind. 580; 27 C.J.S. *Divorce* § 61.

ISSUE TWO.

CONCLUSION—It is our opinion that the amount of child support awarded by the trial court was not excessive or beyond the scope of the evidence.

A father at common law had the duty and obligation to support his children without a court decree. A court order requiring the payment of this support does nothing more than carry out this common law principle. *Crowe* v. *Crowe* (1965), 247 Ind. 51, 211 N.E.2d 164; *Bill* v. *Bill* (1972), 155 Ind. App. 65, 290 N.E.2d 749.

The award of child support is a discretionary act of the trial court. In *Dragoo* v. *Dragoo* (1961), 133 Ind. App. 394, 401-02, 182 N.E.2d 434, 438, the Appellate Court had this to say about the exercise of that discretion and a subsequent review by this court:

"No settled rule can be invoked to control the discretion of the court in granting support for the children in a divorce action. *Dissette* v. *Dissette, supra*. The amount of support is based on the necessities considering the station in life of the parties and the particular facts and circumstances in the case, including the amount of the husband's property and his ability to earn money. See West's I.L.E., Vol. 10, § 170, Ch. 6, p. 662, and cases cited therein. While the discretion of the trial court in matters relative to the support of minor children in the divorce proceeding is a judicial one and subject to review, *the determination of the court below will not be disturbed or interferred [sic] with on appeal unless an abuse of discretion is clearly shown. Poppe* v. *Poppe* (1944), 114 Ind. App. 348, 52 N.E.2d 506. In reviewing a judgment as to support of children, *the reviewing court will make every reasonable presumption in favor of*

*the acts of the trial court.* West's I.L.E., Vol. 10, Ch. 6, § 175, p. 673." (Emphasis supplied.) See also: *Marsico* v. *Marsico* (1972), 154 Ind. App. 436, 290 N.E.2d 99; *Bill* v. *Bill, supra.*

Daniel's meritless contention is that the amount of child support awarded by the trial court is excessive because the court had no evidence before it upon which to base an award.

The undisputed evidence is that Daniel earns approximately $11,600 a year; Mary earns approximately $10,000.00 a year; the approximate cost of child support is $125.00 a week; mortgage payments on the family house are $111.00 per month; Mary has depleted the family's savings of $1,600.00 to support the children; and Mary expected a tuition payment of $375.00 to send the oldest son to high school.

How could we conclude that the trial court abused its discretion in awarding Mary $75.00 per week child support?

The judgment of the trial court is affirmed.

Sullivan and White, JJ., concur.

NOTE.—Reported at 296 N.E.2d 904.