CRUM v. STATE BOARD OF MEDICAL REGISTRATION AND EXAMINATION

[No. 27,546. Filed November 3, 1941. Rehearing denied November 26, 1941.]

*Faust, Faust & Faust,* of Indianapolis, for appellant.

*George N. Beamer,* Attorney General, *Walter O. Lewis,* Deputy Attorney General, and *Albert Stump,* of Indianapolis, for appellee.

SHAKE, J.—The appellee, The State Board of Medical Registration and Examination, revoked, for alleged gross immorality, three certificates issued by it to the appellant entitling him to licenses to practice chiropractic, naturopathy, and electro-therapy. The appellant prosecuted what has been termed an appeal to the circuit court, which likewise found him guilty as charged. He has appealed to this court, assigning that the trial court erred in overruling his demurrer to the complaint and in denying him a new trial, and also

that it was without jurisdiction of the subject-matter. The claim of want of jurisdiction is unique, inasmuch as the appellant, rather than the appellee, invited the *soc* of the court.

The gist of the complaint was that in the practice of the professions for which he was licensed, the appellant employed a mechanical contrivance called an "etherator" or "co-etherator," which was totally devoid of any therapeutic value whatever, other than the possible mental effect on the persons uninformed regarding such machines, devices and practices; that he falsely and fraudulently represented that he could treat and relieve, and in some instances cure, such diseases as cancer, tumors, and blindness, by having his patients deposit slips of paper moistened with saliva into said machine; that appellant claimed that by means of said machine he was able to administer curative treatments at great distances; and that he could also give "financial treatments," by means of which money would come into the hands of his patients. It was alleged by way of conclusion that appellant's practices were inimical to the public health and welfare and constituted gross immorality.

The appellant obtained his licenses by virtue of the provisions of chapter 248 of the Acts of 1927 (§ 63-1312, Burns' 1933, § 10713, Baldwin's 1934), which was an amendment of chapter 169 of the Acts of 1897, as amended by chapter 211 of the Acts of 1901. The title of the act of 1897 was one "regulating the practice of medicine, surgery and obstetrics, providing for the issuing of licenses to practice," etc., to which the title of the act of 1901 added, "also providing for the issuing of certain limited licenses to practice." Licenses to practice chiropractic, naturopathy, and electro-therapy may be said to be limited licenses to

practice medicine, and the provisions of the act of 1927 are therefore within the title. There is no basis for the claim that the statute upon which the charge was predicated is invalid. *State ex rel. Board, etc.* v. *Cole* (1939), 215 Ind. 562, 20 N. E. (2d) 972.

Gross immorality is one of the statutory grounds for revoking a license to practice medicine or healing (§ 63-1306, Burns' 1933, § 10707, Baldwin's ██ 1934), but the appellant contends that the allegations of the complaint do not amount to a charge of gross immorality. He reasons that since the State Board authorized him to be licensed to practice chiropractic, naturopathy, and electro-therapy, it recognized and legalized his right to do the things charged in the complaint. We do not find it necessary to undertake to define what properly constitutes the practice of chiropractic, naturopathy, or electro-therapy, or to enter into any extended discussion as to what conduct is forbidden by the term "gross immorality" as used in the Medical Practice Act. It is enough to say that this court will not judicially presume that the General Assembly intended to authorize a course of conduct so reprehensible and revolting as to shock the sensibilities of reasonable men; on the contrary, it must be assumed that in providing for these licenses, the Legislature intended that the methods employed thereunder should bear some rational relationship to the alleviation of human ills. In *Indiana Board, etc.* v. *Haag* (1916), 184 Ind. 333, 111 N. E. 178, this court fully considered what constitutes gross immorality on the part of one intrusted with a license to practice a profession in this state. What was there said is applicable to the case at bar, and gross immorality was sufficiently charged.

The appellant also calls attention to § 63-1306 and § 63-1310, Burns' 1933, § 10707 and § 10711, Baldwin's

1934, by which the board is forbidden to discriminate against any school or system of medicine, and says that to brand his practices as described in the complaint as immoral would require that his conduct be measured by the standards exacted by other schools of medicine, and that this in turn would call for mere expressions of opinion, rather than facts, as to the curative value of his so-called treatments. He concludes that the issues raised by the charges are therefore beyond the inquisitorial purview of the board and without the reviewing jurisdiction of the courts. The complaint discloses no such fundamental controversy between the concepts of hostile schools of the medical and healing sciences. The charge was, in effect, that the appellant used a device of no possible therapeutic value under any recognized system of treatment, and that he knowingly made false and fraudulent claims with respect to it for his own profit and to the injury of others. No licensee of this state may rightfully claim that privilege. The fact that in the enforcement of the law the administrative agency and the courts may sometimes find it proper or convenient to consider the opinions of skilled and competent experts in determining the virtue of such practices, does no violence to due process or vested rights. The complaint was sufficient.

The judgment is amply supported by the evidence. It appears that after attending high school the appellant entered the College of Drugless Physicians in Indianapolis, from which he was graduated at the end of one year with the degrees of Doctor of Naturopathy, Doctor of Electro-Therapeutics, Doctor of Chiropractic, and Doctor of Herbal Materia Medica. The evidence supports the inference that this institution was nothing more than a "diploma mill." Upon the enactment of the Medical Practice Act of 1927, the appellant was

licensed, without examination, under the so-called "grandfather clause" of said act to practice chiropractic, naturopathy, and electro-therapy.

The appellant afterwards established an office in the City of Indianapolis and from time to time used numerous kinds of mechanical devices in the practice of his professions. In 1936 he obtained a United States patent on the machine with which we are presently concerned. The granting of a patent does not imply that the subject thereof will accomplish what is claimed for it or that it has any merit. In view of the overwhelming evidence that the appellant's contraption had no value in the treatment of diseases, it is reasonable to infer that his purpose in obtaining letters patent was to impress his patients with the thought that the device had some measure of governmental approval.

The machine was a small wood box with a number of holes in the front, over which various colors of thin paper were pasted. On the inside was an ordinary light bulb with a cord for making contact with electricity. The bulb could be moved about so that light would penetrate the various paper-covered holes. The box also contained a quantity of disconnected wire, such as is commonly used for radio aerials, and a glass tube filled with ordinary hydrant water. There was a pedal and a dial on the outside of the box, neither of which had any connection with the interior.

The usual method for treating human ailments was to have the patient moisten a slip of paper with saliva and deposit it through a slot on the top of the box, although it was claimed by the appellant that the same results could be obtained by similar use of the patient's photograph or a specimen of his handwriting. After this was done, the appellant rubbed the pedal with

his thumb and talked to the machine, repeating the popular names of diseases and organs of the body. Among the diseases which the appellant claimed to be able to treat and relieve, and in some instances cure, by this method were cancer, blindness, arthritis, nervous disorders, hemorrhoids, abscesses, kidney ailments, stomach disorders, leakage of the heart, skin ailments, ovarian trouble, varicose veins, and tumors. He asserted that he could lengthen or shorten a patient's legs; cause amputated fingers to grow back into place; and fill cavities in teeth, not with a foreign substance but by restoring them to their original condition. He said that it was not necessary for patients to be present or to visit his office, but that he could broadcast treatments to them wherever they might be located. The appellant's practice was not limited to the treatment of human ills. He also claimed to be able to administer "financial treatments," by means of which money could be put into the hands of his patients; that he could fertilize fields to a distance of 70 miles; kill dandelions over any particular area; and treat golf greens as far from Indianapolis as Decatur, Illinois, so that clover would turn brown and dry up and give the grass a chance to grow.

The mention of the extravagant claims made by the appellant is sufficient to suggest their untruthfulness and brand them as designedly fraudulent. His case is not helped by the fact that he produced numerous witnesses at the trial who voluntarily testified as to miraculous cures that had been brought about by the use of his machine. "Hope springs eternal in the human breast," and it is not uncommon for persons who are afflicted with dreadful diseases to be misled and beguiled into believing that they have been helped by quacks and charlatans. It is reasonable to

suppose that by the enactment of the Medical Practice Acts, it was the deliberate purpose and intention of the General Assembly to protect such unfortunate people from their own credulity. The above summary of the evidence, taken from the appellant's own brief, was sufficient, in our judgment, to justify the trial court in finding him guilty of gross immorality and that he was utterly unfit to be licensed by the State of Indiana to treat human ills.

What we have already said disposes of the appellant's contention that there was error in the admission of the testimony of the State's witnesses Gatch, Batts, and Mitchell.

The judgment is affirmed.

NOTE.—Reported in 37 N. E. (2d) 65.