BRADLEY, Judge.
Lula Williams (appellant) has studied or practiced naturopathy since the late 1950’s. She holds degrees in naturopathy or massage from the following schools: Pacific College of Naturopathic Physicians, Missouri College of Naturopathic Physicians, The Central Ohio School of Massage, and the Australian Naturopathic School.
To obtain these degrees she studied and was tested in subjects such as anatomy, foods, food therapy, nutrition, massage, and colon therapy. Since 1971 Lula Williams has been engaged in the practice of naturopathy in the state of Alabama. She obtained “occupational licenses” from the courthouses in Hale and Tuscaloosa counties. There is no state license for the practice of naturopathy in Alabama.
Mrs. Williams began practicing in Alabama in Hale County. She moved her office to Tuscaloosa in 1979 or 1980. Mrs. Williams had been practicing naturopathy in Tuscaloosa for about two years when Bobbie Jean Wilson came to her office. Mrs. Wilson was a resident of Northport in Tuscaloosa County and had been diagnosed as having cancer in her neck or throat in 1979. Mrs. Wilson had received radiation or cobalt treatments for this disease.
In November of 1981 Mrs. Wilson was suffering pain in her right side. She was admitted to a hospital in Tuscaloosa for the problem. The doctors who saw Mrs. Wilson at the hospital were unable to identify the problem and recommended that she undergo exploratory surgery. Against her medical doctors’ advice, Mrs. Wilson and her husband decided she would not have the surgery, and she checked out of the hospital on December 7, 1981. Later that same day Mrs. Wilson went to Lula Williams’s office for a first appointment.
Lula Williams had never met Bobbie Jean Wilson before this appointment on December 7, 1981. Mrs. Wilson’s mother requested the appointment because she had heard Mrs. Williams speak at the church about health, good diet, and nutrition.
During their initial visit on December 7, 1981, Lula Williams took a history from Mrs. Wilson, weighed her, checked her urine and saliva for levels of salt, sugar, acidity, and alkalinity, and checked her blood pressure. Mrs. Williams told Mrs. Wilson’s mother that medical doctors believed in surgery but that she could help Mrs. Wilson without surgery. Mrs. Williams recommended a diet to Mrs. Wilson of various foods, vitamins, and liquids, all of which could be bought at any grocery store or health food store. For Mrs. Wilson’s pain and discomfort in the abdominal area, Mrs. Williams said it was gas and administered colon therapy to her. She said the enemas would wash the poisons out of Mrs. Wilson’s body. In effect, Mrs. Williams undertook to put Mrs. Wilson in better health by recommending a good diet and using colon therapy.
A sister of Mrs. Wilson testified that she was told by Mrs. Williams that the purpose of the enemas was to remove the toxicity from a person’s body. Mrs. Williams said that a person dying from cancer is really being killed by toxicity. Mrs. Williams also gave this sister a book to read. The book was entitled “How I Conquered Cancer Naturally.”
The husband of Mrs. Wilson stated that Mrs. Williams told him his wife had cancer in its last stages. Mrs. Williams then sold him a colonomy board for Mrs. Wilson’s use at home.
In August 1982 Lula Williams concluded that her nutritional program was not helping Mrs. Wilson. Mrs. Williams recommended that Mrs. Wilson see a Dr. Peterson in Huntsville, who was a “D.O.” (doctor of osteopathy). Dr. Peterson said Mrs. Wilson had cancer of the liver and pre *1053 scribed certain things for her to take. Mrs. Williams testified that even after Dr. Peterson’s diagnosis she never tried to treat Mrs. Wilson for cancer. However, the prescription for ground up apricot pits mixed with mashed bananas to be taken by Mrs. Wilson was in Mrs. Williams’s handwriting.
This recipe contained a large dose of what is commonly called laetrile. Dr. John Fisher, the pharmacologist for Druid City Hospital, stated that twenty to forty apricot pits have been known to cause death in a female adult due to cyanide intoxication. Further, the record shows that in the opinion of Dr. Joseph Prchal of the University of Alabama at Birmingham Medical Center, Mrs. Wilson was suffering from cancer of the liver during 1981 when she was hospitalized and first began seeing Mrs. Williams.
Mrs. Wilson died on February 3, 1983 from “apparent heart failure.”
In December 1982 the State Medical Li-censure Commission filed a petition in the Tuscaloosa Circuit Court seeking to enjoin Mrs. Williams from practicing medicine without a license. After a trial the court found that Mrs. Williams was practicing medicine without being licensed to do so as provided in section 34-24-310, Code 1975. The trial court then enjoined Mrs. Williams from practicing medicine without a license as required by statute; from operating the Health Educational Clinic as a medical office; and from using the designation “Dr.”
Mrs. Williams appealed to the supreme court, but that court transferred the case to this court for decision.
The dispositive issue here is whether Mrs. Williams was practicing medicine out of the Health Educational Clinic, contrary to the laws of Alabama.
The practice of medicine or osteopathy is defined in section 34-24-50, Code 1975. This section provides:
“The ‘practice of medicine or osteopathy’ means:
“(1) To diagnose, treat, correct, advise or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, by any means or instrumentality;
“(2) To maintain an office or place of business for the purpose of doing acts described in subdivision (1), whether for compensation or not;
“(3) To use, in the conduct of any occupation or profession pertaining to the diagnosis or treatment of human disease or conditions, the designation ‘doctor,’ ‘doctor of medicine,’ ‘doctor of osteopathy,’ ‘physician,’ ‘surgeon,’ ‘physician and surgeon,’ ‘Dr.,’ ‘M.D.’ or any combination thereof unless such a designation additionally contains the description of another branch of the healing arts for which a person has a license.”
Section 34-24-51, Code 1975, also provides that no one may practice medicine without first receiving a license to do so from the state licensing board for the healing arts.
It is clear from the evidence that Mrs. Williams had not qualified with the State Licensure Commission to receive a license as a naturopath. As a matter of fact, Mrs. Williams could not be so licensed because the legislature has not made the practice of naturopathy a branch of the healing arts in Alabama.
Did the activities of Mrs. Williams in and about the practice of naturopathy in Tuscaloosa amount to the practice of medicine in Alabama? The trial court found that Mrs. Williams was practicing medicine in Alabama without a proper license. We believe the evidence supports such a finding.
The evidence shows that Mrs. Wilson was suffering from pain in the abdominal region of her body and, after certain tests were administered to her, Mrs. Williams undertook to relieve Mrs. Wilson of her pain and discomfort by prescribing certain foods and vitamins to be consumed and by removing toxic poisons, which cause cancer, from Mrs. Wilson’s body by colonic irrigations, i.e. enemas. Such practice amounts to the practice of medicine be *1054 cause Mrs. Williams undertook to treat Mrs. Wilson’s pain “by any means or instrumentality.”
The evidence further shows that Mrs. Williams operated an office, i.e. Health Educational Clinic, for the purpose of doing the acts above prescribed, which is a violation of section 34-24-50, Code 1975. Moreover, Mrs. Williams used the word “doctor” or “Dr.” in referring to herself and in the advertisements relating to the clinic, which also is a violation of section 34-24-50, Code 1975.
The evidence amply supports the trial court’s findings.
Mrs. Williams’s final contention is that the trial court violated her constitutional rights, especially the fourteenth amendment to the United States Constitution, by finding that her activities amounted to a violation of section 34-24-50, Code 1975.
As mentioned above, the legislature has not established licensing requirements or standards for the practice of naturopathy. Accordingly, the practice of naturopathy should properly be reserved to those practitioners of the healing arts who have been licensed by the appropriate licensing authority. See Hahn v. State, 78 Wyo. 258, 322 P.2d 896 (1958).
Does the failure on the part of the legislature to authorize the licensing of naturo-paths as a branch of the healing arts amount to a violation of Mrs. Williams’s constitutional rights? We believe not.
The United States Court of Appeals for the Fourth Circuit in Idaho Association of Naturopathic Physicians, Inc. v. United States Food & Drug Administration, 582 F.2d 849 (4th Cir.1978), said:
“We conclude that the naturopaths’ various constitutional claims depend on a single underlying contention: that a state must recognize naturopathy as a discipline distinct from the orthodox practice of medicine whose practitioners are entitled to licensing requirements different from those imposed on other physicians. If the naturopaths are correct in this assertion, their other contentions may well have merit, but if it fails, all of their claims must fall with it. In light of the decisions of the Supreme Court that we have reviewed, we find that the na-turopaths’ basic claim has been firmly, repeatedly, and authoritatively rejected.”
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.