STATE of Indiana, ex rel. MEDICAL LICENSING BOARD OF INDIANA, Plaintiff-Appellant,

v.

Janice R. STETINA, Defendant-Appellee.

No. 2–1084A297 *.

Court of Appeals of Indiana, First District.

April 30, 1985.

---

* Transferred to First District by order of Chief Judge Buchanan.

324

Linley E. Pearson, Atty. Gen. of Ind., John Emry, Deputy Atty. Gen., Indianapolis, for plaintiff-appellant.

Janice R. Stetina, pro se.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

The State of Indiana, on behalf of the Medical Licensing Board of Indiana (State), sought to enjoin Janice R. Stetina (Stetina) from engaging in the unlicensed practice of medicine. From an adverse determination in the Marion Circuit Court, the State appeals. We reverse.

## FACTS

Acting on a complaint filed with the Attorney General's Office, Patricia Alder (Alder) was assigned to investigate Stetina's activities. Alder, posing as an acquaintance of one of Stetina's patients, contacted Stetina. She complained of abdominal cramping, dry mouth, nervous tension, and stress. Stetina agreed to set up an appointment to examine Alder at a later date.

On March 29, 1984, Alder and William Smith (Smith), an Indiana State Police officer posing as Alder's husband, went to Stetina's home for the examination. Stetina first had Alder fill out two questionnaires. One sought general information. The second, entitled "Metabolic Classification Questionnaire," sought detailed information regarding Alder's physical and mental health. Its express purpose was to aid in determining what nutrients and supplements would best support Alder's metabolism. Stetina also examined Alder's eyes using an iridology chart.[1] She told Alder

1. The iridology chart, apparently developed by a Los Angeles chiropractic named Bernard Jensen, divides the eyes into numerous sections. Each of these sections then corresponds to a particular portion of the body. During her examination of Alder, Stetina found a brown spot

she was looking for "clues" or "hints" because it was illegal for her to diagnose illness.

From the information contained in the questionnaires filled out by Alder and the eye examination, Stetina was able to determine the causes of Alder's problems. She concluded that Alder's digestion was off, that she had a sugar problem, did not have enough Vitamin C or magnesium, tended to be anemic, and probably retained to much inorganic mineral sediment. Stetina was able to determine from her examination of Alder's eyes that she suffered from abdominal problems, back pain, poor circulation, and a stretched colon. She also suggested that Alder's abdominal cramps were caused by a slow electrical turnover which, when the pH changes, causes the body to neglect to throw off minerals.

Armed with this information, Stetina proceeded to set out a course of treatment for Alder. First, she suggested that Alder submit to colonic irrigation. This procedure, which is very similar to an enema, is designed to flush out the inorganic mineral sediment which Alder had accumulated. Stetina informed Alder and Smith that she had performed over 300 colonic irigations on both adults and children. She also showed them the specially constructed room where these procedures were performed. Both Alder and Smith testified that the room appeared to have been well used. The charge for irigation was $20.00. Stetina also suggested that Alder add some things to her diet. Specifically, Stetina suggested that Alder ingest mineral water, amelade, 80% more raw food, progestine, calcium, food enzymes, and kelp. Alder and Smith declined, however, to undertake this course of treatment.

On May 23, 1984, the State filed its Verified Petition for Injunction and Motion for Temporary Restraining Order. The trial court granted the TRO during an *ex parte* hearing. It was subsequently served on Stetina. On May 29, 1984, the trial court

in one of Alder's eyes which apparently indicated some type of abdominal problem accord-

held a hearing on the State's request for a preliminary injunction. Stetina, appearing without counsel, sought a continuance. The trial court granted her request after she consented to an extension of the TRO. On June 18, 1984, the trial court conducted a consolidated hearing on the State's petitions for preliminary and permanent injunctions. Following presentation of the State's case-in-chief, Stetina, again appearing without counsel, moved to dismiss the State's petitions. The trial court, however, denied her motion to dismiss. Consequently, she sought a second continuance in order to prepare her witnesses, which the trial court granted after she consented to a further extension of the TRO.

When the consolidated hearing resumed on July 23, 1984, the trial court declined to rule on a flurry of motions Stetina had filed with the court. Rather, it ruled that the State had failed to carry its burden of proof. Therefore, it dissolved the TRO and denied the State's petition for a permanent injunction. The State subsequently perfected this appeal.

## ISSUES

We will address the following issues raised by the parties:

1. Whether the trial court erred when it dismissed the State's petition for an injunction following its case-in-chief.

2. Whether the trial court had jurisdiction to decide this case.

3. Whether the State was entitled to seek an injunction to prevent the continuing commission of a felony.

4. Whether Stetina was entitled to confront the complaining party.

5. Whether Stetina was entitled to the assistance of lay counsel.

6. Whether a *pro se* litigant is held to the same standards as a licensed attorney.

ing to her iridology chart.

7. Whether any of the evidence obtained by the State during its investigation of Stetina was subject to exclusion.

## DISCUSSION AND DECISION

*Issue One*

■ The State is appealing from an involuntary dismissal granted pursuant to Indiana Rules of Procedure, Trial Rule 41(B).[2] Consequently, it is appealing from a negative judgment. *Burras v. Canal Construction and Design Co.* (1984), Ind. App., 470 N.E.2d 1362, 1368. Our standard of review in such cases is well settled.[3] We may not reweigh the evidence or judge the credibility of witnesses. Only where the evidence is without conflict and leads to a single conclusion different from that reached by the trial court will we reverse. *Public Service Co. v. Gibbs* (1984), Ind. App., 460 N.E.2d 992, 993, *trans. denied; United Artists Theatre Circuit, Inc. v. Indiana Department of Revenue* (1984), Ind.App., 459 N.E.2d 754, 756, *trans. denied; Litzelswope v. Mitchell* (1983), Ind. App., 451 N.E.2d 366, 369. Application of this standard to the facts in the record now before us requires reversal.

■ In order to prevail, the State was required to establish two elements. It had to show that Stetina was engaged in the practice of medicine and that she was not licensed to do so.[4] The uncontradicted evidence presented during the State's case-in-chief did in fact establish the existence of these elements.

2. The basis for the trial court's ruling is not completely clear from the record. We agree with the State, however, that the only possible characterization of the trial court's action is that it reconsidered the earlier denial of Stetina's motion to dismiss.

3. In its briefs to this court, the State incorrectly states our standard of review. Relying on a previous version of Trial Rule 41(B), the State asserts that we need determine whether, looking only to the evidence most favorable to their position, a *prima facie* case was established entitling it to an injunction against Stetina. However, the 1982 amendment to Trial Rule 41(B) permits the trial court to weigh evidence and judge the credibility of witnesses. *Kimbrell v. City of Lafayette* (1983), Ind.App., 454 N.E.2d 73,

■ Indiana Code section 25–22.5–1–1.-1(a) (Burns 1982) defines the practice of medicine. It provides in pertinent part:

"(a) 'Practice of medicine or osteopathic medicine' means any one [1] or a combination of the following:

"(1) Holding oneself out to the public as being engaged in the diagnosis, treatment, correction or prevention of any disease, ailment, defect, injury, infirmity, deformity, pain or other condition of human beings, or the suggestion, recommendation or prescription or administration of any form of treatment, without limitation, or the performing of any kind of surgical operation upon a human being, including tattooing, or the penetration of the skin or body orifice by any means, for the intended palliation, relief, cure or prevention of any physical, mental or functional ailment or defect of any person;

"(2) The maintenance of an office or place of business for the reception, examination or treatment of persons suffering from disease, ailment, defect, injury, infirmity, deformity, pain or other conditions of body or mind; ..."

Stetina's activities clearly fell within this statutory definition. She diagnosed Alder's condition based on information she gathered from the questionnaires Alder filled out and from the iridology examination of Alder's eyes.[5] Then, based on this

74. Therefore, the proper standard of review is, in fact, that applied to the review of negative judgments. *Burras*, at 1368; 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2376 (1971).

4. Indiana Code section 25–22.5–8–1 (Burns 1982) states:

"Unlawful Practice. It is unlawful for any person to practice medicine or osteopathic medicine in this state without holding a license or permit to do so, as provided in this article."

5. Indiana Code section 25–22.5–1–1.1(c) (Burns 1982) states:

"(c) 'Diagnose or diagnosis' means to examine a patient, parts of a patient's body, substances taken or removed from a patient's

diagnosis, Stetina proceeded to prescribe a course of treatment for Alder which included the ingestion of various substances and a colonic irrigation procedure.[6] In addition, the evidence presented by the State revealed that Stetina used a portion of her home for the reception, diagnosis and treatment of patients. Consequently, we must conclude that the uncontradicted evidence presented during the State's case-in-chief established that Stetina was engaged in the practice of medicine as defined in Ind.Code § 25–22.5–1–1.1(a).

 Stetina argues that the State failed to establish that she was holding herself out to the public as being engaged in the practice of medicine as required by the statutory definition. Stetina asserts, without citation to any authority, that this element of the definition requires some form of public solicitation. She contends that she has never advertised her services in any form. Rather, she insists that she operates privately, dealing only with those who seek her out. Stetina's argument, however, misinterprets the introductory phrase of Ind.Code § 25–22.5–1–1.1(a)(1). That provision is not meant to apply solely to those who advertise their willingness to engage in the type of activities it defines. Instead, it applies to all those individuals who are prepared to provide these services to the general public. Thus, Stetina, who was obviously willing to diagnose and treat

Alder, a person she had not met before March 29, 1984, came within the definition of Ind.Code § 25–22.5–1–1.1(a)(1) despite the fact that she never utilized formal means of advertising her services.

 The State has also satisfied the second required element. The uncontradicted evidence presented during the hearing established that Stetina was not licensed by the State of Indiana to practice medicine in any form. In fact, Stetina admits that she is unlicensed. Therefore, the uncontradicted evidence established that Stetina was both engaged in the practice of medicine and unlicensed. Consequently, we must conclude that the trial court erred when it dismissed the State's petition for an injunction.

Although our resolution of this issue in the State's favor is dispositive, it necessitates that we remand in order to afford Stetina her opportunity to present evidence. It is clear that a number of the issues Stetina raises in her brief to this court will reappear on remand. Therefore, in an effort to provide some guidance to the trial court, we will briefly discuss a few of those issues.[7]

*Issue Two*

 Stetina raises several rather confusing arguments which in essence attack the jurisdiction of the trial court. We note initially that the circuit court is a court of

---

body, or materials produced by a patient's body to determine the source or nature of a disease or other physical or mental condition, or to hold oneself out or represent that a person is [a] physician and is so examining a patient. It is not necessary that the examination be made in the presence of the patient; it may be made on information supplied either directly or indirectly by the patient."

6. Indiana Code section 25–22.5–1–1.1(f) (Burns 1982) states:
 "(f) 'Prescribe or prescription' means to direct, order or designate the use of or manner of using, a drug or medicine or treatment, by spoken or written words or other means."

7. We have, however, chosen not to deal with several arguments which Stetina advanced in her brief to this court. She argues in her brief for application of the Religious Practice Exception embodied in Indiana Code section 25–22.5–1–2(f). However, since she has not yet present-

ed her case-in-chief it would be premature to consider the exception's application. Stetina also asserted that the application of the Medical Practice Act contravenes the legislature's intent. That argument is relevant to the merits of the State's petition which we discussed above. For the first time, Stetina also contends that she is being denied equal protection. She asserts that the State is seeking to enjoin her from engaging in the same activities which it has expressly allowed Solomon Wickey to engage in. She has not, however, introduced any evidence into the record as of yet which would support her equal protection argument. Finally, Stetina included in her brief a request that this court issue a permanent injunction forbidding the Medical Licensing Board of Indiana from further harassing Stetina or her family. We are not empowered to issue such an order in this case. Consequently, Stetina's request must be denied.

general jurisdiction with the power to hear a petition for injunction. IND. CONST. art. 7 § 8; Indiana Code section 33-4-4-3(a) (Burns 1985); *Suyemasa v. Myers* (1981), Ind.App., 420 N.E.2d 1334, 1339. Stetina argues, however, that she has provided beneficial services to the Indianapolis community and has harmed no one. Consequently, she asserts, the trial court cannot effect a remedy and hence has no jurisdiction. This argument relates more to the merits of the State's petition than to the issue of the trial court's jurisdiction. Therefore, we must conclude the trial court did in fact have subject matter jurisdiction.

██ The trial court also had personal jurisdiction over Stetina. She was served with a summons, the temporary restraining order, and the verified petition for injunction. Stetina was entitled to no other service prior to the court's exercise of its jurisdiction over her.

*Issue Three*

██ Stetina also argues that the State should have brought a criminal prosecution rather than the civil injunctive proceedings it chose to pursue. She asserts that by so doing, the State has deprived her of some of the constitutional rights attendant criminal proceedings. The State is, however, entitled seek an injunctive remedy under the provisions of the Medical Practice Act. Indiana Code section 25-22.5-8-4 (Burns 1982); *Dean v. State ex rel. Board of Medical Registration and Examination* (1954), 233 Ind. 25, 30, 116 N.E.2d 503, 506 (decided under prior statute similar to provision now in effect). We find no error in their election to pursue that remedy.

*Issue Four*

██ Stetina next contends that her sixth amendment right to confrontation was denied when the State refused to reveal the name of the person who first brought Stetina's activities to the Attorney General's attention. We disagree. The sixth amendment right to confrontation is not implicated here. The individual who complained about Stetina's activities initial-

ly, neither testified at the hearing nor provided the State with any evidence. The State's petition was based solely on the investigation undertaken by Alder and Smith. They were present at the hearing and subject to cross-examination by Stetina. We find no error here.

*Issue Five*

██ Stetina also contends that she was denied her choice of counsel. At the initial hearing, Stetina sought the assistance of an unlicensed individual in handling her case. The trial court, however, denied Stetina's request. Contrary to Stetina's arguments on appeal, the trial court acted properly. There is no constitutional right to representation by lay counsel. *Thomas v. Estelle* (5th Cir.1979), 603 F.2d 488, 489; *United States v. Taylor* (7th Cir.1977), 569 F.2d 448, 451, *cert. denied* 435 U.S. 952, 98 S.Ct. 1581, 55 L.Ed.2d 803; *Turner v. American Bar Association* (N.D.Tex. 1975), 407 F.Supp. 451, 483 (contains discussion rebutting precisely same arguments raised by Stetina); *see also Fair v. Givan* (N.D.Ind.1981), 509 F.Supp. 1086, 1090 (regarding lay representation of criminal defendant); *Owen v. State* (1978), 269 Ind. 513, 518, 381 N.E.2d 1235, 1238 (also concerns lay representation of criminal defendants). Any other rule would in effect put this court in the position of sponsoring the unauthorized practice of law.

*Issue Six*

██ Stetina also asserts that she cannot be held to the same standards when representing herself as a licensed attorney is when representing another. Her argument has previously been rejected however. A litigant who proceeds *pro se* is held to the same established rules of procedure that trained legal counsel is bound to follow. *Owen,* at 518, 381 N.E.2d at 1239, *quoting State ex rel. Sanders v. Reeves* (1950), 228 Ind. 293, 91 N.E.2d 912; *Smith v. State* (1977), 267 Ind. 167, 174, 368 N.E.2d 1154, 1158; *Craig v. State* (1980), Ind.App., 403 N.E.2d 925, 927. This is precisely why the trial court wisely advised

Stetina to seek the assistance of a licensed attorney.

*Issue Seven*

■ Finally, Stetina argues that certain evidence was obtained illegally and, therefore, should have been excluded.[8] Stetina initially challenges the electronic surveillance undertaken during Alder's and Smith's visit to her home on March 29, 1984. Apparently, either Alder or Smith wore a concealed transmitter which permitted two other officers to monitor the conversations between Alder, Smith and Stetina. However, no evidence gained through the use of this device was offered at the hearing. The trial court, consequently, had no opportunity to apply the exclusionary rule to that evidence.

■ Stetina also appears to argue that the entry of Smith and Alder into her home constituted a violation of the fourth amendment. They were invited into the home, however, by Stetina. Thus, she consented to the governmental intrusion. The mere fact that Stetina was unaware of the agents' true identities does not, in itself, vitiate that consent. *Lewis v. United States* (1966), 385 U.S. 206, 207, 87 S.Ct. 424, 425, 17 L.Ed.2d 312, 314; *Stinchfield v. State* (1977), 174 Ind.App. 423, 431, 367 N.E.2d 1150, 1156.

■ Stetina also challenges the validity of the search warrant obtained by the State for the search of her home. The warrant authorized the seizure of, among other items, "medical files". Stetina contends that the warrant should have specified the names of the medical files to be seized. In this instance, at least, such was not required. As the State points out in its brief, the specificity required for a valid search warrant is that which is sufficient to preclude a general fishing expedition by police. *United States v. Prewitt* (7th Cir.1977), 553 F.2d 1082, 1086, *cert. denied* 434 U.S. 840, 98 S.Ct. 135, 54 L.Ed.2d 104. The search

warrant issued in this case accomplished that purpose.

■ Stetina finally challenges the seizure of her papers as being a violation of her fifth amendment right against self-incrimination. These were apparently prepared voluntarily however. Therefore, they were subject to seizure pursuant to a valid search warrant. *Andersen v. Maryland* (1976), 427 U.S. 463, 473–74, 96 S.Ct. 2737, 2747, 49 L.Ed.2d 627, 638; *see also United States v. Doe* (1984), 465 U.S. 605, ——, 104 S.Ct. 1237, 1241–42, 1245, 79 L.Ed.2d 552, 559–60, 563.

The judgment of the trial court is reversed and the cause remanded to allow appellee an opportunity to present her evidence.

NEAL, J., and ROBERTSON, J., concur.

---

8. The State argues in its brief that since this is a civil proceeding, the exclusionary rule should not be applied. We decline to resolve that issue in this appeal however.

* Transferred to First District by order of Chief Judge Buchanan.