513 N.E.2d 1234 (1987)
Janice R. STETINA, Appellant (Defendant below),
v.
STATE of Indiana, ex rel. MEDICAL Licensing Board of Indiana, Appellee.
No. 49A02-8605-CV-169.
Court of Appeals of Indiana, Second District.
October 6, 1987.
Rehearing Denied November 9, 1987.
*1235 Janice R. Stetina, pro se.
Linley E. Pearson, Atty. Gen., John Emry, Deputy Atty. Gen., Indianapolis, for appellee.
SULLIVAN, Judge.
In State ex rel. Medical Licensing Board v. Stetina (1985) 1st Dist.Ind. App., 477 N.E.2d 322, trans. denied, the First District of this Court concluded that the State had successfully presented a prima facie case in its suit to permanently enjoin Janice Stetina from unlicensed medical practice. Consequently, the decision reversed the trial court, which had dismissed the action at the close of the State's case-in-chief. The cause was remanded "to allow appellee [Stetina] an opportunity to present her evidence." Id. at 329.
Upon remand, the trial court heard Stetina's evidence. The court entered a judgment granting permanent injunctive relief. The judgment, in relevant part, reads as follows:
"[I]t is ORDERED, ADJUDGED AND DECREED:
1. The Defendant, Janice R. Stetina, is hereby permanently enjoined from practicing medicine in Indiana until she is issued a license by the State of Indiana.
2. The Defendant, Janice R. Stetina, is not enjoined from lecturing to or educating *1236 members of the public on her view of the value of nutrition or from selling products to members of the public so long as the Defendant does not examine the member, diagnose or treat the member, sell the member health products based on the Defendant's assessment of the members' needs or problems or otherwise engage in the practice of medicine or violate any other statute regulating her actions and representations." Record at 728.
Stetina now appeals.
The operative facts of the State's case are set forth in Stetina, supra, 477 N.E.2d at 324-25. We summarize them here. An investigation into Stetina's activities took the form of having an investigator pose as a person seeking advice on her physical condition. Stetina elicited information from the investigator using questionnaires and examining of the investigator's eyes. Based upon the information obtained, Stetina determined that the investigator had, inter alia, nutritional problems, abdominal problems, a slow electrical turnover, and poor circulation. To remedy these problems, Stetina suggested a colonic irrigation (an enema), mineral water, kelp, amelade, progestine and more raw food.
Stetina's evidence, presented on remand, focused primarily upon the basis for, and nature of, her beliefs and practices. Stetina testified that the Essene Gospels mandated the colonic irrigation process and that her activities are also based upon scientific, nutritional principles. These include prevention of disease through proper diet. Stetina also opined that traditional medical doctors are not adequately trained in the areas in which she works.
Dr. David Darbro, a practicing physician, agreed with Stetina's assessment that traditional medical training has not in the past been sufficiently grounded in natural and dietetic processes. He also stated that a colonic irrigation, if judiciously ordered, could be a helpful treatment. He noted that one person had responded well when receiving that treatment from Stetina. Stetina's other two witnesses were persons who had conferred with her. Both testified to an overall physical and mental improvement after their consultations with Stetina.
Stetina pursues the following issues, which have been restated and reordered:
1. Does application of the Medical Practice Act[1] to persons such as Stetina violate the legislatively intended scope of the Act;
2. Did the trial court err by interpreting the Medical Practice Act in an overly broad and vague manner, thus creating the possibility of absurd results in defining "medical practice";
3. Does Stetina's conduct fall within the religious conduct exception of I.C. 25-22.5-1-2(f) (Burns Code Ed.Supp. 1987);
4. Does the injunction granted in this case violate Stetina's right to free exercise of religion;
5. Does Stetina's conduct fall within the physician's assistant exception of I.C. 25-22.5-1-2(r) (Burns Code Ed.Supp. 1987);
6. Does Stetina's conduct fall within the family-domestic remedy exception of I.C. 25-22.5-1-2(e) (Burns Code Ed. Supp. 1987);
7. Is there a less intrusive manner of upholding the intended goal of the statute while preserving the patient's right to choose the type of medical care preferred;
8. Does the injunction violate Stetina's free speech rights by preventing her from carrying on personal discussions;
9. Does the judgment in this case deny Stetina equal protection of the law because of a different enforcement of the Medical Practice Act in an unrelated case; and
10. Did changes in the investigator's testimony invalidate that testimony and thus render the judgment contrary to law?
The State contends that review of Stetina's case is totally precluded because she *1237 failed to present cogent argument[2] and citation to persuasive authority.[3]
Stetina appears pro se. Her brief is not a paradigm of clarity nor does it contain abundant citation to persuasive authority. It does, however, provide some basis for intelligent review. Stetina cites some pertinent statutory provisions, I.C. 25-22.5-1-1.1 to 25-22.5-8-4 (Burns Code Ed. Repl. 1982 and Supp. 1987), and cites correctly to a case interpreting the predecessor to the current statutory provisions, Dean v. State ex rel. Board of Medical Registration & Examination (1954) 233 Ind. 25, 116 N.E.2d 503. Moreover, Stetina's arguments, though not using legal terminology and the analysis one might expect in an appellate brief, do provide a minimally acceptable framework within which to review the case. Stetina argues, in part, that the trial court's injunction was outside the legislatively intended scope of the statute; that her acts fell within some exceptions to the prohibition of unlicensed practice; that the trial court misinterpreted the statutes; and that her constitutional rights were violated.
In Terpstra v. Farmers & Merchants Bank (1985) 3d Dist.Ind. App., 483 N.E.2d 749, trans. denied, the Third District confronted a similar situation  an appellant, proceeding without counsel, filed a brief which was allegedly deficient. Here, as in Terpstra, we reach the merits vel non of Stetina's appeal,[4] concluding that her arguments have been presented clearly enough to be understood. We do not mean to suggest, however, that litigants, whether with or without counsel, have carte blanche to present cases in any manner they might choose. Litigants are ill-served by briefs which fail to follow the Rules of Appellate Procedure and fail to articulate the precise legal grounds upon which a claim for appellate relief is predicated. As noted in Terpstra:
"The purpose of AP. 8.3 is to aid and expedite review and relieve the appellate court of the burden of searching the record and briefing the case. We will not become an advocate for a party, nor will we address arguments which are either inappropriate, too poorly developed or improperly expressed to be understood... . [W]e conclude that ... we are not substantially impeded from reaching to the merits of this appeal." Id. at 754 (Emphasis supplied).
Stetina first argues that the intent of the Medical Practice Act is to protect people from their own credulity, citing Dean, supra, 116 N.E.2d 503. She then contends that application of the Act to her in the capacity as a nutritionist does nothing to further that purpose. She claims that it has a negative effect in that it perpetuates physician incompetence in the nutrition field, prevents public awareness of nutrition education and care, and drives medical care costs upward.
The question presented in Dean was whether the predecessor statute was criminal or civil in nature. Criminal statutes, the court observed, are those designed to prevent and punish criminal activity. The Act was designed to regulate the practice of medicine and was therefore not a criminal statute. Dean, supra, 116 N.E.2d at 505. The Dean court's statement about credulity had its genesis in a prior case, Crum v. State Board of Medical Registration (1941) 219 Ind. 191, 37 N.E.2d 65. Crum involved a person claiming, inter alia, the ability to cure myriad conditions, *1238 including cancer and blindness, by use of a mechanical contrivance into which a salivamoistened slip of paper was inserted. The Crum court concluded:
"[I]t is not uncommon for persons who are afflicted with dreadful diseases to be misled and beguiled into believing that they have been helped by quacks or charlatans. It is reasonable to suppose that by the enactment of the Medical Practice Acts, it was the deliberate purpose and intention of the General Assembly to protect such unfortunate people from their own credulity." Id. at 198-99, 37 N.E.2d at 68.
Dean differs significantly from Crum, and the statements in Dean, taken from Crum, must be viewed in the factual context before the Dean court. Jay Dean was a practicing chiropractor. Nothing in the case indicates that Dean's actions or inducements in any manner played upon his clients' gullibility. Dean may thus stand for the proposition that one need not be engaged in fraudulent or misleading activity to come within the prohibition against unlicensed practice.
In this light, the Dean rationale becomes more clear  the purpose of the Medical Practice Act is to protect people. It is not, however, solely designed to protect people in a vulnerable position from gullibility in medical matters. The Act's scope is broader  it protects people generally in their relationships with professionals to whom they entrust medical judgments. That protection does include protection against charlatans, quacks and frauds. Yet the regulatory scheme also protects against the well-intentioned but unskilled practices of health care professionals, as well as against those well-intentioned and skilled practices which simply exceed the scope of acceptable health care. Consequently, one need not violate or seek to violate the patient trust to come within the intent and words of the Medical Practice Act's prohibitions.
Accordingly, even though Stetina's actions were apparently undertaken with the best of intentions and not designed to prey upon ignorance or gullibility, that fact does not preclude application of the Act. Her argument in this regard, therefore, is of no avail.
Stetina's contention that delivery of nutrition-related health care services is unduly hampered by the injunction is likewise unavailing. The argument seeks implicitly to engage us in making societal and medical value judgments about the services Stetina provides. We are neither equipped nor empowered to make such determinations. The Iowa Supreme Court in State ex rel. Iowa Department of Health v. Van Wyk (1982) Iowa, 320 N.W.2d 599, 605, addressed a similar contention, stating:
"It is perhaps possible that some promising areas of health care are overlooked or ignored under our existing scheme. On the other hand some methods of health care may be deliberately left undeveloped and unpracticed because they are thought to be dangerous, or worthless. The courts are not called upon to sort out these areas and decide which are promising and which are not.
It would be an abuse of power for us to second guess what we have long held to be the clear legislative determination, so long as that determination abides within the framework of the constitution."
Stetina next argues that the trial court's interpretation of the Act creates the possibility of absurd definitions of "medical practice." Attacking the vagueness of the statute, Stetina contends that simple advice such as "take a walk every day" or "you should rest" would be held to constitute medical practice, as would the advertising of a number of services and products which tout therapeutic benefits.
A portion of Stetina's argument involves a re-evaluation of how "holding oneself out" should be defined. The phrase is part of I.C. 25-22.5-1-1.1 involving the definition of medical practice. In the first appeal, Stetina contended that "holding oneself out" should involve an element of solicitation. The First District disagreed, writing, "That provision is not meant to apply solely to those who advertise... . Instead, *1239 it applies to all those individuals who are prepared to provide these services to the general public." Stetina, supra, 477 N.E.2d at 327. The State contends that Stetina's argument is now precluded by law of the case.
To the extent that Stetina seeks a second bite at the apple in her argument concerning the phrase "holding oneself out," the State is correct. The Fourth District recently noted: "The rule [of law of the case] holds prior appellate decisions conclusive on all questions which have been actually considered and determined in the first appeal." Hewell v. State (1987) 4th Dist.Ind. App., 507 N.E.2d 241, 243. However, the preclusion against relitigating the First District's construction of "holding oneself out" does not mean that Stetina is precluded from pursuing a second, unrelated, and previously unlitigated attack on the same statute, particularly when, as here, the new attack stems from a judgment made and entered after the first appeal.
Again, in relevant part, the judgment provides:
"1. The Defendant, Janice R. Stetina, is hereby permanently enjoined from practicing medicine in Indiana until she is issued a license by the State of Indiana.
2. The Defendant, Janice R. Stetina, is not enjoined from lecturing to or educating members of the public on her view of the value of nutrition or from selling products to members of the public so long as the Defendant does not examine the member, diagnose or treat the member, sell the member health products based on the Defendant's assessment of the member's needs or problems or otherwise engage in the practice of medicine or violate any other statute regulating her actions and representations." Record at 728.
The injunction appears to be in three parts. First, Stetina is enjoined from unlicensed practice of medicine. Second, Stetina may disseminate information concerning the value of good nutrition and may sell products (presumably nutrition-related) to the public. Third, Stetina may not engage in treatment, examination, diagnosis, or sales of products based upon her assessment of need or condition, nor may she prescribe a treatment on the basis of examination or diagnosis.
Under I.C. 25-22.5-1-1.1, holding oneself out as being engaged in diagnosis, treatment, correction or prevention of a human condition is considered practicing medicine. Consequently, the judgment, by its own express terms as well as by its more "specific" terms, merely prohibits Stetina from doing that which the statute prohibits her from doing. In other words, "the order does nothing to change the status of the parties." American Buildings Co. v. Kokomo Grain Co. (1987) 2d Dist. Ind. App., 506 N.E.2d 56, 65, trans. denied. The difficulty Stetina perceives in determining that which is and that which is not covered by the injunction may be attributable in large measure to the broad terms of the judgment itself, as well as to the trial court's failure to specify actions which constitute the practice of medicine.
However, unlike the judgment in American Buildings Co., supra, the judgment here is subject to affirmance because there is no prohibition in the judgment which does not have a proper statutory basis. Because the judgment's terms comport wholly with portions of the relevant statutory section, I.C. 25-22.5-1-1.1, it is not erroneous although it may in part be redundant.
Stetina's vagueness argument might be viewed as a constitutional attack upon the judgment or upon statute. The First District has concluded that the statutory definition of the practice of medicine is not unconstitutionally vague. Graham v. State (1985) 1st Dist.Ind. App., 480 N.E.2d 981, cert. denied (1986) ___ U.S. ___, 107 S.Ct. 646, 93 L.Ed.2d 702. If Stetina argues only that the judgment and statute give rise to the possibility of "absurd" prosecutions for statements such as "Take a rest" or "Take a walk every day," we are not given cause for reversal. Stripped of its constitutional dimension, Stetina's argument points to possibly harsh prosecutions in perhaps unfortunate circumstances. Yet *1240 neither proposed prosecutions nor proposed actions are before this court. The State has not sought enforcement of the injunction via a contempt action.[5] We will not now speculate as to possible circumstances and conduct which might fall within the injunctive and statutory prohibitions.
We do note, however, that the gravamen of the judgment seems to limit its application. It appears that items in the nature of speech and lecturing are permissible. Prohibitions against treatment seem to center on that conduct which is physically intrusive in nature, such as colonic irrigations. See Williams v. State ex rel. Medical Licensure Commission (1984) Ala., 453 So.2d 1051 (holding colonic irrigations to be practice of medicine under similar statute). The judgment also seeks to prohibit the obtaining of information for the purposes of treatment. Thus, the thrust of the injunction is in accord with the generally acknowledged purpose for prohibiting unlicensed practice. In addressing a contention concerning the scope of its licensing act coverage, the Mississippi Supreme Court, in Norville v. Mississippi State Medical Ass'n (1978) Miss., 364 So.2d 1084, 1089-90, wrote:
"Norville has argued strenuously that since none of the vitamins involved require medical prescription and may be purchased by any layman over the counter in most stores, use of such vitamins should not be denominated `practice of medicine.' We are fully cognizant that any layman can obtain such vitamins and that any retailer can sell vitamins. Purchase of or sale of vitamins is not however the vice which is condemned here. Rather the vice condemned and that which constitutes the unlicensed practice of medicine is (1) prescription of vitamins, (2) to cure, (3) an ailment or disease, (4) for compensation.
The chiropractor on the present facts does not simply sell vitamins to a customer who asks for them as does a retailer. Rather, he represents to a patient who has come to him that such vitamins will cure a disease or ailment. Further, unlike the relative or friend who recommends that someone take vitamins for nutrition or to prevent colds, and neither expects nor receives any compensation for such `advice,' the chiropractor in a professional capacity advises the patient to take the vitamins for the ailment or disease, charges compensation for such advice, and may cause the patient to think his ailment or disease will thereby be cured. This is the vice condemned and the danger of such is amply demonstrated by the record.
Norville testified that his treatment for people with high blood pressure or excessive cholesterol in the blood was a product called Cholaplex which was described as `a nutritional concentrate containing extracts of Calf Brain and Beef Liver, soluble fermentation residues, dehydrated extract of buckwheat (Green Leav) ageous extract of Bovine Orchic tissue [cow gonads] ... yeast beef lipids and organic iodine protein complex.' When asked how he diagnosed the presence of cholesterol in the blood, he replied `by physical examination,' but admitted he did not take a blood specimen. There exists then the danger that a patient will be subjected to a medicine for a condition which does not exist, or fail to seek proper medical attention under the belief he is being `cured' by vitamins.
Thus, conceding that the vitamins prescribed may cause no harm themselves, may even be beneficial, and may be obtained without medical prescription, nevertheless, there are sufficient reasons to justify the legislative determination classifying the use of medicines, including vitamins, to cure ailments as the practice of medicine, and prohibiting chirporactors from utilizing medicines, including vitamins, to cure ailments."
Stetina's next two contentions involve the religious basis for her activities. She first contends that her conduct falls within the exception of I.C. 25-22.5-1-2(f), *1241 which provides that the unauthorized practice sanctions do not apply "to any member of any church practicing its religious tenets so long as he does not make a medical diagnosis, prescribe or administer drugs or medicine, perform surgical or physical operations, nor assume the title of or hold himself out to be a physician." (Emphasis supplied). She also asserts that her activities were protected by her constitutional right to free exercise of religion. The State contends that these issues, along with the three which follow, are waived because of Stetina's failure to plead them in a timely fashion. See Indiana Rules of Procedure, Trial Rule 8(C). As to the religion-based affirmative defenses, we disagree. Stetina testified extensively about the nature of her religious beliefs and how they impacted upon her counseling and practice. Her thorough description of these beliefs was presented to the trial court without objection from the State. Though the State sought to prevent the admission of evidence supporting affirmative defenses, ample evidence of religion and its effect on Stetina's behavior was before the court. Because evidence on the issues was in the nature of an additional defense and entered without objection, the issues must be considered litigated by implied consent. Indiana Rules of Procedure, Trial Rule 15(B); Dotlich v. Dotlich (1985) 1st Dist.Ind. App., 475 N.E.2d 331, 350, trans. denied.
Stetina's defenses  the statutory exceptions and constitutional protection arguments  are outside the scope of the State's prima facie case. They are in the nature of affirmative defenses and are matters upon which she bore the burden of proof. Rice v. Grant County Board of Commissioners (1984) 2d Dist.Ind. App., 472 N.E.2d 213, 214, trans. denied. The injunction was in favor of the State. Consequently in this regard, Stetina stands in the position of one appealing a negative judgment. State ex rel. Indiana State Highway Commission v. Fair (1981) 1st Dist.Ind. App., 423 N.E.2d 738, 740. In reviewing negative judgments, we review the evidence most favorable to the party prevailing below, including the reasonable inferences which obtain from the evidence. Only when the evidence leads solely to the conclusion opposite the one reached by the trial court will this court reverse the trial court's judgment. Public Service Co. of Indiana v. Gibbs (1984) 2d Dist.Ind. App., 460 N.E.2d 992, 993, trans. denied.
Both the statutory and constitutional religious claims fail for the same reason. To come within the scope of either protection, Stetina was obligated to show that her activities were part of a religious practice. She did not do so. In fact, the testimony shows that the discussion with the undercover officer, as well as the consultations with the two "patients" who testified for Stetina, were not premised upon the proposition that those persons were followers of the same religious creed or were all members of the same church or religious organization. While Stetina's teachings may be based upon her fervently held religious beliefs and while those beliefs may be the motivation for her nutritional and health-related activities, there is simply nothing of record which would permit the conclusion that the activities and the teachings are a part of the tenets of a church. In other words, though Stetina believes that God shows the way to good nutrition and health, there is nothing to indicate that those who receive Stetina's teaching are compelled to do so by their religious beliefs nor that a church, to which Stetina belongs, sponsors or compels her beliefs and teachings. Therefore, though Stetina's motivations are religious, her practice is not necessarily so. Because it is her practice which is the subject of the injunction, not her beliefs and motivations, her claims of impingement upon her religious activities must be rejected.
Stetina's arguments concerning the other two statutory exceptions are likewise unavailing. Setting aside our reservations concerning whether these defenses were preserved, we see no merit in them. Stetina first contends that she is a physician's assistant under I.C. 25-22.5-1-2(r). To qualify for this exception, the assistant must be, among other things, in the employ of a physician and must be under the direction *1242 or supervision of that physician. The evidence indicates that Dr. Darbro referred patients to Stetina. It does not indicate that she was employed by Dr. Darbro nor that he supervised her work. Stetina's "Dear Doctor" letter, suggesting that she will function as an "auxiliary" to the doctor's overall care, is equivocal and does not compel the conclusion that she was employed by any physician. Stetina bore the evidentiary burden upon this issue. The trial court did not err in determining that she had not met the burden.
Stetina next argues that she fell within the domestic remedy exception of I.C. 25-22.5-1-2(e), for "any person administering a domestic or family remedy to a member of his family." Stetina's contention is that "family" must receive a broader construction than merely that of immediate relatives. We disagree. "Family," as used in this section, does mean only those persons having some cognizable, familial relationship with the person in question. It cannot be construed to be "kindred spirits," as impliedly argued, because the statute speaks in terms of a "domestic" remedy, further indicating that a more traditional definition of "family" was intended. Moreover, were we to give the construction for which Stetina contends, the exception would become so broad and pervasive as to encompass all persons for whom one felt some affinity, be it personal, spiritual or emotional. The exception, if given such construction, could work to erode the prohibition to which it applies. In short, the term "family" means something more specific than merely the "family of man."
Stetina's next argument concerns the patient's right to select the medical care preferred. She posits a different manner by which the intended goal of the statute (presumably, in her view, protecting people from their own gullibility) could be met  an informed consent form, which would tell the patient that Stetina is not a licensed physician. Thus, she contends, disclosure would be made, the statute's goals met, and patients not deterred from seeking her care.
To the extent that Stetina seeks to assert the privacy right of her patients to choose the care preferred, she is asserting the rights of a third party. Absent extraordinary circumstances, which have neither been alleged nor litigated here, Stetina may not predicate a claim of constitutional error without a showing of injury to her. Cf. Medical Licensing Board v. Indiana State Chiropractic Ass'n (1978) 2d Dist., 176 Ind. App. 40, 373 N.E.2d 1114. To the extent that Stetina argues for a different manner of handling the problem of unlicensed practice of medicine, i.e., use of an informed consent form, that argument is unpersuasive. More accurately, it runs contrary to the statutorily expressed method of regulating the field of health care. There is no statutory provision in Article 22.5 of Title 25 which would indicate that certain health care services should be provided only when the patient understands and accepts the consequences of a particular service. The Legislature imposed both criminal and civil sanctions for the unauthorized practice of medicine, as well as providing for an injunctive remedy to cease unauthorized practice. I.C. 25-22.5-8-1 (Burns Code Ed.Repl. 1982) (declaring unauthorized practice "unlawful"); I.C. 25-22.5-8-2 (Burns Code Ed.Supp. 1987) (unlawful practice is a class C felony); I.C. 25-22.5-8-4 (Burns Code Ed.Repl. 1982) (providing injunctive remedy for unlicensed practice). None of the sanctions hinge upon the actions or understanding of the person receiving services.[6]
As a portion of her equal protection argument, infra, Stetina apparently contends that the injunction deprives her of the opportunity to engage in dialogue and that she must disseminate information only by lecturing. This argument seems to be an indirect method of asserting an impairment of free speech rights. However the assertion might be construed, it is simply without foundation. The judgment entered does expressly permit Stetina to lecture the *1243 public. It does not, however, either impliedly or expressly prevent her from receiving information or engaging in dialogue. Implicitly, the judgment is permissive in this respect, allowing both lecture and education.
As a result of the foregoing, Stetina's equal protection claim is unmeritorious. She asserts that the Medical Licensing Act has been unequally enforced, pointing to a consent decree entered into by one Solomon Wickey in an unrelated lawsuit in Adams County, Indiana, in 1983. Wickey may, Stetina argues, converse with his clients while she may not. We have already concluded that the predicate to the claim of unequal protection is erroneous. Moreover, mere unequal prosecution of actions does not, ipso facto, rise to the level of a denial of equal protection. See Young v. State (1983) 3d Dist.Ind. App., 446 N.E.2d 624, 626, trans. denied.
Stetina's final claim involves assertions of inconsistency in the investigator's testimony. As we have often stated:
"This court cannot weigh conflicting evidence, and if there is any substantial evidence in the record to sustain the findings and decisions of the trial court, the judgment must be affirmed. The trial judge, it must be borne in mind, as the trier of facts, was not bound by the testimony of any single witness or any particular item of evidence. As has been so often and correctly stated, it was the exclusive province of the trial court to determine the credibility of the witnesses, whom he had the opportunity to observe, [and] weigh the evidence." Mitchell v. Mitchell (1956) 126 Ind. App. 377, 379, 133 N.E.2d 79, 81.
There is substantial evidence to support the determination of the trial court, which reconciled the alleged inconsistencies in testimony. We will not disturb that determination.
The judgment is affirmed.
BUCHANAN and HOFFMAN, JJ., concur.
NOTES
[1] I.C. 25-22.5-1-1.1 to 25-22.5-8-4 (Burns Code Ed.Repl. 1982 and Supp. 1987).
[2] The word "cogent" means persuasive. An advocate does not waive an argument merely because it fails to persuade. The argument may not result in a reversal, but it must nevertheless be considered upon its merits before it may be determined to be unpersuasive. In this regard it may be noted that there is no "cogency" requirement in Appellate Rule 8.3(A)(7).
[3] The State has posed other arguments concerning waiver and has made a contention of issue preclusion based upon the doctrine of law of the case. We address those arguments, infra, as they pertain to each issue.
[4] The appellee's brief at page 19 contains the following description of the Terpstra decision: "pro se appeal was dismissed for failure to comply [with Appellate Rule 8.3]." Our reading of the disposition of this particular issue in Terpstra differs more than slightly from the appellee's. It seems ironic that, in discussing the adequacy of the appellant's brief, the appellee's brief is not adequate.
[5] The enforcement of a judgment with terms so broad as the one before us might prove problematic.
[6] Of course our decision in this regard has no relevance with respect to the necessity of patient consent to licensed medical treatment in the context of medical malpractice.